J-E03004-18

2019 PA Super 117

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL C. WOOD | : | |
| | : | |
| Appellant | : | No. 1193 MDA 2017 |

Appeal from the Judgment of Sentence June 29, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001382-2013

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL C. WOOD | : | |
| | : | |
| Appellant | : | No. 1194 MDA 2017 |

Appeal from the Judgment of Sentence June 29, 2017
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001758-2017

BEFORE: GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., and MURRAY, J.

OPINION BY MURRAY, J.:                                    **FILED APRIL 15, 2019**

Daniel C. Wood (Appellant) appeals from the judgment of sentence

entered at Docket Number CP-06-CR-0001758-2017 (1758-2017) for failure

to comply with registration requirements[1] as required under Pennsylvania's Sexual Offender Registration and Notification Act (SORNA),[2] and the judgment of sentence entered at Docket Number CP-06-CR-0001382-2013 (1382-2013) following the revocation of his probation for failing to register pursuant to SORNA. Appellant argues that the application of SORNA to his case constituted an unconstitutional *ex post facto* punishment because he committed the sex offense to which he pled guilty at Docket Number 1382-2013 prior to SORNA's effective date. After careful consideration, we reverse Appellant's conviction for failure to comply with registration requirements and vacate his judgment of sentence at Docket Number 1758-2017. Additionally, we reverse the trial court's order finding Appellant in violation of probation and vacate the judgment of sentence imposed after the trial court revoked his probation at Docket Number 1382-2013.

On June 13, 2013, Appellant entered a negotiated guilty plea at Docket Number 1382-2013 to one count of statutory sexual assault[3] after his stepdaughter, who was under 14 years of age, reported that Appellant sexually abused her on three to four occasions in 2012, with the final incident occurring near the end of August of that year.

---

[1] 18 Pa.C.S.A. § 4915.1(a)(1).

[2] 42 Pa.C.S.A. §§ 9799.10–9799.41.

[3] 18 Pa.C.S.A. § 3122.1(b).

Following Appellant's guilty plea, the trial court ordered Appellant to submit to an evaluation by the Sexual Offenders Assessment Board (SOAB). The SOAB determined that Appellant was not a sexually violent predator. Appellant, however, was classified as a Tier III sex offender under SORNA.[4] *See* 42 Pa.C.S.A. § 9799.14(d)(3). On October 29, 2013, the trial court sentenced Appellant to 9 to 23 months of imprisonment followed by five years of probation. Additionally, as a Tier III offender, the trial court directed Appellant to register with the Pennsylvania State Police as a sex offender for the remainder of his life. *See* 42 Pa.C.S.A. § 9799.15(a)(3). Appellant did not file a direct appeal from his judgment of sentence at Docket Number 1382-2013.

On January 31, 2017, while Appellant was still serving his sentence of probation at Docket Number 1382-2013, the trial court issued a bench warrant for Appellant's arrest for failing to comply with the conditions of his probation, namely, by failing to register as a sex offender pursuant to SORNA. Appellant was subsequently arrested and charged at Docket Number 1758-2017 with

---

[4] "For adult sexual offenders, SORNA classifies sexual offenses into three tiers, with different levels of registration requirements. … Tier I offenses require registration for fifteen years, and Tier II mandates twenty-five years of reporting. *Id.* § 9799.15(a). Lifetime registration is reserved for those convicted of a Tier III sexual offense, those determined to be sexual violent predators under 42 Pa.C.S.A. § 9799.24, sexually violent delinquent children, and [certain juvenile offenders[.]" *In re J.B.*, 107 A.3d 1, 5 (Pa. 2014).

one count of failure to comply with registration requirements and one count of failure to verify his address, 18 Pa.C.S.A. § 4915.1(a)(1), (2).

On June 29, 2017, Appellant entered a negotiated plea of guilty at Docket Number 1758-2017 to a single count of failure to comply with registration requirements. The same day, the trial court sentenced Appellant to 18 months to 5 years of imprisonment.[5] The trial court proceeded immediately to a hearing on Appellant's violation of probation on the underlying statutory sexual assault conviction at Docket Number 1382-2013, triggered by his failure to register under SORNA. Appellant waived his right to a formal **Gagnon II**[6] hearing, and admitted to violating his probation by failing to register and by incurring a new conviction. The trial court entered an order finding him in violation of his probation. **See** N.T., 6/29/17, at 7-8. The trial court revoked Appellant's probation and re-sentenced him to 18 to

---

[5] Section 4915.1(a)(1) states:

> **(a) Offense defined.--**An individual who is subject to registration under 42 Pa.C.S. § 9799.13 (relating to applicability) commits an offense if he knowingly fails to:
>
> \* \* \*
>
> (1) register with the Pennsylvania State Police as required under 42 Pa.C.S. § 9799.15 (relating to period of registration), 9799.19 (relating to initial registration) or 9799.25 (relating to verification by sexual offenders and Pennsylvania State Police)

18 Pa.C.S.A. § 4915.1(a)(1).

[6] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

- 4 -

60 months of imprisonment, concurrent with the sentence imposed for his conviction of failure to comply with registration requirements at Docket Number 1758-2017.

On July 19, 2017, the Pennsylvania Supreme Court issued its Opinion Announcing the Judgment of the Court in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017), *cert. denied sub nom.*, **Pennsylvania v. Muniz**, (U.S. Jan. 22, 2018), which found SORNA to be punitive in nature and held that retroactive application of the registration and reporting requirements of SORNA violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **Id.** at 1223.

On July 31, 2017, Appellant filed notices of appeal at both Docket Number 1382-2013 and Docket Number 1758-2017, which we consolidated *sua sponte*. On appeal, Appellant argued that his sentences at Docket Number 1758-2017, for failure to comply with registration requirements, and at Docket Number 1382-2013, for violation of his probation by failing to register under SORNA, were illegal in light of **Muniz**. Appellant asserted that **Muniz** declared SORNA's registration provisions punitive, and thus, the retroactive application of SORNA's registration provisions to Appellant when he committed sexual offenses prior to December 20, 2012 – SORNA's effective date – violated the *ex post facto* clause of both the United States and Pennsylvania Constitutions.

On April 20, 2018, this Court certified this case for *en banc* review[7] on

the following issues:

> (1) In consideration of Appellant's having committed the relevant crimes in 2012, all prior to December 2012, whether the enactment date or the effective date of the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.[A.] §§ 9799.10-9799.41, controls for purposes of offenses committed between the enactment date and the effective date?
>
> (2) Whether there is an *ex post facto* violation to a defendant who is sentenced under SORNA for criminal acts committed after the enactment date of SORNA (December 20, 2011) but before the effective date of SORNA (December 20, 2012)?
>
> (3) Whether this Court must address if the Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; "Act 10"), applies in the instant case and all cases governed by SORNA and, if so, whether Act 10 renders the registration provisions of SORNA non-punitive?
>
> (4) If Act 10 applies in the instant matter, whether Act 10's potential effects on Appellant, as a result of the crimes having been committed in 2012, but all before December 2012, violate the *ex post facto* clause of the United States or Pennsylvania Constitutions?

Order Directing *En Banc* Certification, 4/20/18.

We begin by addressing the first two issues, as they are dispositive of

this appeal. Appellant argues that he should not be subject to SORNA's

registration and reporting requirements. Appellant asserts that although the

General Assembly enacted SORNA on December 20, 2011, prior to the time

he committed his crimes in August 2012, SORNA did not go into effect until

---

[7] This Court also certified **Commonwealth v. Lippincott**, 2057 EDA 2014, for *en banc* review, which involves the same issues.

December 20, 2012. Therefore, Appellant contends that the application of SORNA to his case violates the *ex post facto* clause of the Pennsylvania Constitution under **Muniz**. Because this issue presents a question of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Lee**, 935 A.2d 865, 876 (Pa. 2007).

"The Pennsylvania General Assembly passed SORNA as Act 111 of 2011, signed December 20, 2011. In so doing, it provided for the expiration of prior registration requirements, commonly referred to as Megan's Law, 42 Pa.C.S.A §§ 9791–9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date." **In re J.B.**, 107 A.3d 1, 3 (Pa. 2014).

For purposes of registration, SORNA classifies sexual offenders into the following three tiers:

> Those convicted of Tier I offenses are subject to registration for a period of fifteen years and are required to verify their registration information and be photographed, in person at an approved registration site, annually. 42 Pa.C.S.[A.] § 9799.15(a)(1), (e)(1). Those convicted of Tier II offenses are subject to registration for a period of twenty-five years and are required to verify their registration information and be photographed, in person at an approved registration site, semi-annually. 42 Pa.C.S.[A.] § 9799.15(a)(2), (e)(2).
>
> Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. 42 Pa.C.S.[A.] § 9799.15(a)(3), (e)(3).

**Muniz**, 164 A.3d at 1206-07 (footnotes omitted).

The offenses that constitute Tier I, II, and III offenses are set forth in 42 Pa.C.S.A. § 9799.14(b)-(d). Here, there is no dispute that Appellant would be a Tier III sex offender under SORNA due to his conviction of statutory sexual assault. *See* 42 Pa.C.S.A. § 9799.14(d)(3). As a Tier III offender, Appellant would be subject to lifetime registration and quarterly reporting requirements. *See* 42 Pa.C.S.A. § 9799.15(a)(3), (e)(3). Because he committed these offenses prior to when SORNA became effective, Appellant argues that under ***Muniz***, the application of SORNA to his sentence violates the *ex post facto* clause of the Pennsylvania Constitution.

In ***Muniz***, our Supreme Court in a plurality decision explained that the *ex post facto* clauses of both the United States and Pennsylvania Constitutions ensure "that individuals are entitled to fair warning about what constitutes criminal conduct, and what the punishments for that conduct entail." ***Muniz***, 164 A.3d at 1195 (internal citations omitted). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." ***Id.*** (quoting ***Weaver v. Graham***, 450 U.S. 24 (1981)).

***Muniz*** identified the four types of laws that deny the protections that the *ex post facto* prohibitions seek to afford: (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; (2) Every law that aggravates a crime, or

makes it greater than it was, when committed; (3) ***Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed***; and (4) Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. ***Muniz***, 164 A.3d at 1195 (citing ***Calder v. Bull***, 3 U.S. 386, 390 (1798)). The Court explained that laws that fall within any of the above four ***Calder*** designations and which disadvantage the defendant are *ex post facto* laws and constitutionally infirm. ***Id.*** at 1196.

The Supreme Court in ***Muniz*** then addressed the constitutionality of SORNA. The Court concluded that SORNA violated *ex post facto* prohibitions under both the United States and Pennsylvania constitutions. ***Id.*** at 1223. The ***Muniz*** Court reasoned that despite the legislature's designation of SORNA as a civil remedy, it was punitive in nature, and consequently, SORNA, as a criminal penalty, fell within the third ***Calder*** category (*i.e.*, application of the statute would inflict greater punishment on the appellant than the law in effect at the time he committed his crimes). ***Id.*** at 1196, 1218. Accordingly, the Supreme Court vacated the portion of the judgment of sentence that required the appellant to comply with SORNA. While ***Muniz*** is not a majority decision, the concurring opinion joins the Supreme Court's lead opinion to the extent it concludes that SORNA is punitive and that it was unconstitutional as applied

to the appellant, in violation of both state and federal *ex post facto* prohibitions.[8]

Like ***Muniz***, this case implicates the *ex post facto* clauses of the United States and Pennsylvania Constitutions because application of SORNA's registration requirements would impose greater punishment on Appellant than the law in effect at the time he committed his crimes. ***See id.*** at 1195-96. Specifically, Appellant argues that his sentence for failure to comply with

_____

[8] Justice Wecht's concurrence, joined by Justice Todd, agrees with the lead opinion that retroactive application of SORNA violates the *ex post facto* provision of the Pennsylvania Constitution. However, the concurrence takes issue with the lead opinion's position that Pennsylvania's *ex post facto* clause grants greater protection than the federal *ex post facto* clause. The concurring opinion asserts instead that "the United States Supreme Court's interpretation of the federal *ex post facto* clause is entirely consistent with our understanding of Pennsylvania's clause," and that the Pennsylvania Supreme Court "has gone to great lengths to align our own *ex post facto* jurisprudence with decisions from the United States Supreme Court." ***Muniz***, 164 A.3d at 1225, 1228. The concurrence finds no justification for a departure from federal *ex post facto* precedent when interpreting the Pennsylvania *ex post facto* clause. Nevertheless, the concurrence concludes that even "applying federal *ex post facto* standards . . . SORNA is punitive and cannot be applied retroactively." ***Id.*** at 1232-33. Thus, the concurrence agrees with the holding of the lead opinion that SORNA violates federal and state *ex post facto* prohibitions. ***See MacPherson v. Magee Memorial Hosp. for Convalescence***, 128 A.3d 1209, 1229 (Pa. Super. 2015), (quoting ***Commonwealth v. Brown***, 23 A.3d 544, 556 (Pa. Super. 2011) ("[i]n cases where a concurring opinion enumerates the portions of the plurality's opinion in which the author joins or []agrees, those portions of agreement gain precedential value . . . . [H]owever, [if] the concurrence does not explicitly state its agreement or disagreement with the plurality, we must look to the substance of the concurrence to determine the extent to which it provides precedential value to points of agreement.").

registration requirements was illegal pursuant to **Muniz**.[9]  He contends that at the time he committed the underlying offense of statutory sexual assault in August 2012, he would have been subject to then-effective Megan's Law III under which statutory sexual assault was not a registerable offense, rather than the lifetime registration and reporting requirements of SORNA.  **See** 42 Pa.C.S.A § 9795.1 (expired).  Appellant asserts that the application of SORNA retroactively inflicted upon him a punishment greater than what he would have been subjected to under the law in effect at the time he committed the crime.

Further, although his guilty plea and sentence for statutory sexual assault occurred after SORNA's effective date, Appellant contends that for purposes of an *ex post facto* analysis, the date upon which the crime was committed is dispositive, and not the date of conviction, entry of a guilty plea, or sentencing.  While his subsequent offense of failure to comply with registration requirements occurred after SORNA's effective date, he asserts that he cannot be found guilty of the offense of failure to register because the

---

[9]  **See Commonwealth v. Batts**, 163 A.3d 410, 434 (Pa. 2017) (citation omitted) ("A challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*."); **see also Commonwealth v. Infante**, 63 A.3d 358, 363 (Pa. Super. 2013) (quotations and internal citations omitted) ("Following probation violation proceedings, this Court's scope of review is limited to verifying the validity of the proceeding and the legality of the sentence imposed.  The defendant or the Commonwealth may appeal as of right the legality of the sentence.  42 Pa.C.S.A. § 9781(a).  As long as the reviewing court has jurisdiction, a challenge to the legality of the sentence is non-waivable and the court can even raise and address it *sua sponte*.").

registration requirement itself was unconstitutional under *Muniz*. Consequently, he further argues that his sentence for violating his probation for failing to register is likewise illegal.

The Commonwealth counters that although SORNA became effective on December 20, 2012 (after Appellant committed his offenses), SORNA was enacted one year earlier on December 20, 2011 (before Appellant committed his offenses). Thus, the Commonwealth asserts that Appellant had sufficient notice of SORNA's impending registration requirements at the time he committed his offenses, and consequently, there was no *ex post facto* violation.

As Appellant argues, this Court has held that the critical inquiry for determining whether the application of SORNA to a convicted sex offender violates *ex post facto* prohibitions is the date of the offense. *Commonwealth v. Horning*, 193 A.3d 411, 417 (Pa. Super. 2018). Additionally, the parties do not dispute that the application of SORNA to a sex offender for offenses committed prior to SORNA's enactment constitutes an *ex post facto* violation in light of *Muniz*. Instead, the parties dispute whether it is also an *ex post facto* violation to apply SORNA to an individual who committed sex offenses prior to its effective date.

In support of his argument, Appellant relies on the United States Supreme Court's decision in *Weaver v. Graham*, 450 U.S. 24 (1981), in which the Court expounded on the *ex post facto* prohibitions. In that case,

the Supreme Court stated that "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." ***Id.*** at 28 (quotations and citations omitted). With the *ex post facto* prohibition, "the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." ***Id.*** at 28-29. Importantly, "the *ex post facto* prohibition . . . forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." ***Id.*** at 30. "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." ***Id.***

Based on the United States Supreme Court's decision in **Weaver**, we hold that, for purposes of our *ex post facto* analysis, it is SORNA's effective date, not its enactment date, which triggers its application. Although the Supreme Court in **Weaver**, at times, used the concepts of "effective date" and "enactment date" interchangeably, a review of the decision in its entirety reveals that the Court intended for the effective date of a statute to be the relevant date for *ex post facto* determinations. ***See id.*** at 31 (stating that "[t]he critical question is whether the law changes the legal consequences of acts completed **before its effective date**"). The Supreme Court made clear

in **Weaver** that the framers designed the *ex post facto* clause to preclude legislatures from passing laws that increased the punishment beyond what was in effect at the time the crime was committed. **See id.** To conclude otherwise would render a statute's effective date meaningless. As our Supreme Court has explained, "[i]t is presumed that every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect[.]" **Commonwealth v. Lobiondo**, 462 A.2d 662, 664 (Pa. 1983). We decline to interpret SORNA in a manner that does not give effect to the statute's effective date.

Moreover, reliance on the enactment date as the triggering date would result in disparate treatment for convicted sex offenders. If we relied on the enactment date as the trigger for application of SORNA, it could potentially result in different registration and reporting requirements for sex offenders who committed the exact same crime on the exact same day. If one of those offenders committed a sex offense in early 2012 and was convicted and sentenced prior to December 20, 2012, SORNA could not apply because it was not yet effective. If another offender committed the same crime on the same day, but was not convicted and sentenced until after December 20, 2012, under the Commonwealth's position, that offender would be subject to SORNA's registration and reporting provisions. This improperly gives effect only to the dates of the offenders' convictions and sentencing when we have explicitly held that the date of the offense is the relevant inquiry when

determining whether an *ex post facto* violation has occurred. ***See Horning***, 193 A.3d at 417.

To apply SORNA to offenders whose crimes were committed before its effective date would increase punishment for sexual offenses from the punishment which existed at the time of the offense. Therefore, we hold that application of SORNA to sexual offenders for offenses committed before its effective date violates the *ex post facto* clauses of the United States and Pennsylvania Constitution.

This conclusion comports with other persuasive authority on the issue. ***See U.S. v. Tykarsky***, 446 F.3d 458, 480 (3d Cir. 2006) ("if a defendant completes a crime before an increased penalty takes effect, it would violate his right not to be subject to *ex post facto* legislation to impose the increased penalty upon him"); ***Coady v. Vaughn***, 770 A.2d 287, 289 (Pa. 2001) *opinion after certified question answered*, 251 F.3d 480 (3d Cir. 2001) ("A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and inflicts a greater punishment than the law annexed to the crime, when committed"); ***Commonwealth v. Quintanilla-Pineda***, 736 MDA 2017 (January 23, 2018) (unpublished memorandum) (vacating portion of sentence requiring the defendant to comply with SORNA for offenses committed when Megan's Law III was still applicable, even though defendant's guilty plea and sentence occurred after SORNA's effective date); 1 Pa.C.S.A. § 1701 (Statutory Construction Act) ("except as otherwise

provided in this chapter all statutes enacted finally at any regular session of the General Assembly **not containing a specified effective date** shall be effective on the date specified by that one of the following rules of construction in effect on the date of final enactment of the statute") (emphasis added); 1 Pa.C.S.A § 1926 (Statutory Construction Act) ("no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly"); **Commonwealth v. Johnson**, 553 A.2d 897, 899 (Pa. 1989) ("The principle embodied in the Statutory Construction Act, that the legislature must clearly manifest an intent to apply an act retroactively, is also recognized in case law"); **Witmer v. Exxon Corp**., 394 A.2d 1276, 1284 (Pa. 1978) *aff'd* 434 A.2d 1222 (1981) (a court cannot accelerate the date chosen by the legislature for a statute to become effective).

Instantly, Appellant committed statutory sexual assault no later than August 2012. The General Assembly explicitly stated that SORNA became effective on December 20, 2012. **See Commonwealth v. Martinez**, 147 A.3d 517, 522 (Pa. 2016) (reiterating that "SORNA provided for the expiration of Megan's Law as of December 20, 2012, and for the effectiveness of SORNA on the same date."). Thus, Appellant committed his crime approximately four months prior to SORNA's effective date. Given the foregoing, and in reliance on our Supreme Court's decision in **Muniz**, we agree with Appellant that application of SORNA's registration and reporting requirements in his case violated *ex post facto* prohibitions, as it inflicted a greater punishment upon

him than the law in effect at the time he committed the crime of statutory sexual assault.

In support of its argument, the Commonwealth relies on **Commonwealth v. Kizak**, 148 A.3d 854 (Pa. Super. 2016). Kizak was arrested for DUI on two separate occasions in three months – on September 24, 2014 and on December 10, 2014. **Id.** at 855. During that time period, the General Assembly amended Section 3806 of the Motor Vehicle Code, "which addresses the calculation of prior DUI offenses to determine whether a defendant is a repeat offender for sentencing purposes." **Id.** at 858-59. The amendment to Section 3806 was enacted on October 27, 2014 and took effect on December 26, 2014.[10] **Id.** at 859. "[U]nder the 2014 amendment, the ten-year 'look back' period for determining prior offenses became the date of sentencing and was no longer the date that the offense occurred." **Id.** "Also, Section 2 of Act 2014-189 provides that the amendment of [S]ection 3806(b) **shall apply to persons sentenced** on or after [December 26, 2014,] the effective date of this section." **Id.** (citation omitted, emphasis in original). Kizak argued the trial court's treatment of her December 10, 2014 DUI as a second DUI offense violated *ex post facto* prohibitions when the amendment of Section 3806 did not become effective until December 26, 2014, which was after her offense occurred. **Id.** at 856.

---

[10] Section 3806 has since been amended again. **See** 75 Pa.C.S.A. § 3806 (S.B. 290, 200 Gen. Assemb., Reg. Sess. (Pa. 2016), Act 33 of 2016).

In rejecting Kizak's *ex post facto* claim, this Court explained:

> The amendment to the law in question was signed by the Governor of Pennsylvania on October 27, 2014. Over six weeks later, on December 10, 2014, Appellant committed the instant DUI offense. The amendment to [S]ection 3806(b) took effect on December 26, 2014. Furthermore, the legislature specified in the statute that the amendment of section 3806(b) "shall apply to persons **sentenced on or after** [December 26, 2014,] the effective date of this section." Act 2014-189 § 2 (emphasis added).
>
> Appellant was charged with the instant DUI offense on January 23, 2015. On May 20, 2015, Appellant entered her guilty plea. Thereafter, on July 14, 2015, the trial court, applying the amendment to section 3806(b), imposed Appellant's judgment of sentence.
>
> Here, the new law was not applied to events occurring before its enactment, that being October 27, 2014, because the instant offense was committed on December 10, 2014. Moreover, Appellant had fair notice of the change in the statute as her offense occurred more than six weeks after the amendment to the statute was signed into law. Accordingly, we are satisfied that there was no *ex post facto* violation in the instant matter.

*Id.* at 860; *see also Commonwealth v. McGarry*, 172 A.3d 60 (Pa. Super. 2017) (applying the *Kizak* holding to an identical *ex post facto* claim involving the 2014 amendment to Section 3806).

We find *Kizak* distinguishable. In *Kizak*, the DUI statute at issue, Section 3806, expressly stated that it applied to persons **sentenced after its effective date**. *Kizak*, 148 A.3d at 859. This Court therefore elected in *Kizak* to honor the expressly stated intent of the General Assembly and apply the statute to sentences imposed after its enactment date, even for crimes committed before the effective date. SORNA, however, does not include

language such as that contained in Section 3806 (*i.e.*, that SORNA is to apply to any sexual offender convicted after its effective date, regardless of the date the offense was committed). Thus, we decline to extend our holding in **Kizak** to matters arising under SORNA. Further, to the extent **Kizak** would hold that the relevant date in conducting an *ex post facto* analysis is always the enactment date of the statute, as opposed to the effective date, we overrule such a holding.

Because Appellant's conviction for failure to register is based on his violation of retroactively applied registration requirements under SORNA, and because such retroactive application of SORNA is unconstitutional under **Muniz**, we reverse the conviction for failure to register, and vacate that judgment of sentence. In addition, we reverse the trial court's order finding Appellant in violation of probation and vacate the judgment of sentence imposed following revocation of Appellant's probation.

Finally, we acknowledge that in our order directing *en banc* certification of this case, we asked the parties to brief whether Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; "Act 10") renders the registration provisions of SORNA non-punitive, and if so, whether application of Act 10 to Appellant would violate the *ex post facto* clauses of the United States and Pennsylvania Constitutions. We decline, however, in this instance to address the constitutional implications of Act 10.

As this Court recently explained:

In response to our Supreme Court's decision in **Muniz** and this Court's later decision in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017), **appeal granted**, 190 A.3d 581 [] (Pa. July 31, 2018) (holding certain sexually violent predator provisions of SORNA were constitutionally infirm), the Pennsylvania General Assembly passed Acts 10 and 29 of 2018. The express purpose of these legislative enactments was, *inter alia*, to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood[,]" and to cure SORNA's constitutional defects by "address[ing] [**Muniz** and **Butler**]." **See** 42 Pa.C.S.A. § 9799.51(b)(1),(4).

Specifically, our General Assembly modified Subchapter H's registration requirements for those offenders convicted of committing offenses that occurred on or after SORNA's effective date of December 20, 2012. The General Assembly also added Subchapter I to Title 42, Part VII, Chapter 97. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date.

**Commonwealth v. Bricker**, --- A.3d ---, 2018 WL 5093265 at *4 (Pa. Super. 2018).

Appellant originally pled guilty at Docket Number 1382-2013 to one count of statutory sexual assault, 18 Pa.C.S.A. § 3122.1(b). As Appellant points out, however, statutory sexual assault is not an enumerated offense necessitating registration in Act 10's Subchapter I. **See** 42 Pa.C.S.A. § 9799.55. Thus, Appellant would not have to register as sex offender under Act 10 and consequently, the constitutionality of that legislation is not at issue in this appeal. Additionally, we recognize that our Supreme Court recently granted review to determine the issue of whether Acts 10 and 29 are

- 20 -

constitutional. ***See Commonwealth v. Lacombe***, 35 MAP 2018 (Pa. 2018).

Accordingly, we decline to address those issues in this appeal.

Judgments of sentence vacated. Jurisdiction relinquished.

President Judge Gantman, President Judge Emeritus Bender and Judges Bowes, Panella, Lazarus, Ott, and Dubow join the Opinion.

Judge Stabile files a concurring opinion in which President Judge Emeritus Bender and Judge Bowes join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/15/2019