J-S04037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANK WILSON | : | |
| | : | |
| Appellant | : | No. 2697 EDA 2017 |

Appeal from the Judgment of Sentence March 21, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0015280-2009

BEFORE:  BENDER, P.J.E., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 06, 2020**

Frank Wilson (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of involuntary deviate sexual intercourse (IDSI) and unlawful contact with a minor.[1]  For the reasons that follow, we affirm Appellant's convictions, but vacate his judgment of sentence to the extent it instructs him to register as a sex offender pursuant to Megan's Law, 42 Pa.C.S.A §§ 9791-9799.9 (expired), and remand this matter to trial court for proceedings consistent with this decision.

The trial court summarized the facts of this case as follows:

[Victim] testified that Appellant ". . . abused drugs, a lot of physical abuse, mental, sexual abuse."  [N.T.], 10/10/13, at 9.  She stated that [] Appellant sexually abused her from ages nine to fourteen.  *Id.* at 20.  On multiple occasions[,] Appellant would "touch [her] breast, [her] vagina, and put [her] hand on his penis."  *Id.* at 10-12.  [V]ictim also noted that Appellant would

_____

[1]  18 Pa.C.S.A. §§ 3123, 6318(a)(1).

then "pray afterwards and ask God to forgive us for our sins." *Id.* at 15. [Victim] testified that [] Appellant's lips and tongue would also touch her vagina on multiple occasions, almost "every day." *Id.* at 15-16. She testified that on one occasion "he put the tip of his penis in [her] vagina." *Id.* at 17. . . . [Victim]'s mother also testified about Appellant's propensity for physical and verbal abuse. *Id.* at 98-100. Appellant took the stand in his own defense. N.T., 10/15/13, at 56. He testified to using cocaine once or twice a week beginning in 2003 or 2004, but that he has since been drug-free for seven years. *Id.* at 69-70.

The jury began deliberations on October 15, 2013 at 3:15 p.m. *Id.* at 138. Deliberations continued until October 16, 201[3] at 2:53 p.m. N.T., 10/16/13, at 19. At that time, the foreperson stated that all jurors had reached a verdict of guilty on all charges. *Id.* at 20-21. Upon a poll, Juror Number Two disagreed. *Id.* at 22. The trial court then excused the jurors to the deliberation room without further instructions at 3:00 p.m., at which point Appellant's counsel unsuccessfully moved for a mistrial. *Id.* at 23-27. The [c]ourt stated, "[i]t is my belief there is a verdict. It's unanimous, it's a verdict. I'm starting to believe that it's not a unanimous verdict on the rape charge." *Id.* at 27. The jury re-entered the courtroom at 3:05 p.m. *Id.* at 28. The [c]ourt asked the foreperson if the jury had reached any unanimous verdicts to which the foreperson replied, "yes, sir." *Id.* The jury was polled again, and again Juror Two dissented. *Id.* at 30. The court crier then asked, "To No. 2, now? Involuntary deviate sexual intercourse with a child." *Id.* at 30. Juror Number Two then asked to see the form and stated, "agree with it." *Id.* The verdict was thus recorded. *Id.* at 34. The jury found Appellant guilty of involuntary deviate sexual intercourse . . . and unlawful contact with a minor. *Id.* at 35. However, the jury was hung on the rape charge. *Id.*

Trial Court Opinion, 8/1/17, at 2-3.

On March 21, 2014, the trial court sentenced Appellant to an aggregate 8 to 16 years of incarceration, followed by four years of probation. The trial court recounted the procedural history that followed:

[A]ppellant filed a motion for extraordinary relief with this [c]ourt regarding the polling of the jury, which was denied on

March 21, 2014. Further post-sentence motions regarding corrections to the trial transcripts and jury polling were also denied on August 29, 2014. A notice of appeal . . . was filed on September 26, 2014. On November 5, 2015, the Superior Court dismissed the appeal for failure to file a timely brief. A petition for post-conviction relief was subsequently filed on May 18, 2016, and [Appellant] was granted a new attorney on January 11, 2017. Appellant's direct appeal rights were reinstated *nunc pro tunc* on January 20, 2017, and a new notice of appeal to the Superior Court was filed on February 5, 2017.

*Id.* at 1-2.

On appeal, Appellant presents the following issues for review:

I. Whether the trial court erred in denying both of Appellant's motions for a mistrial after [Juror Two] repeatedly disagreed with the purported verdict both during the first and second attempts to poll the jury.

II. Whether the trial court erred in denying Appellant's motion for a mistrial after [Juror Two] was coerced into agreeing with the guilty verdict.

III. Whether the trial court erred in granting the Commonwealth's "prior bad acts" motion and permitting the Commonwealth to introduce evidence that Appellant was a drug user and that he physically abused the complainant and her mother.

IV. Whether the trial court erred in requiring Appellant to register as a sex offender as the SORNA statute is unconstitutionally punitive when applied to Appellant's pre-December 2012 acts in violation of the state and federal *ex post facto* clauses.

Appellant's Brief at viii.

Appellant's first two issues are related and we therefore address them together. Appellant argues that the trial court erred in denying his request for a mistrial after the court polled the jury during the reading of the verdict.

- 3 -

Appellant asserts that the verdict was not unanimous and that the trial court did not adhere to Pennsylvania Rule of Criminal Procedure 648(G) when Juror Two expressed disagreement with the verdict for a second time and the court did not retire the jury for further deliberations. Appellant further asserts that the court crier coerced Juror Two into agreeing with the verdict on Appellant's IDSI charge.

We begin by acknowledging the standard of review:

It is well-settled that the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused. A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.

***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011) (quotations and citations omitted).

With respect to jury verdicts, this Court has explained:

A conviction must be based on a unanimous jury verdict. Moreover, in order to ensure the unanimity of the verdict, a defendant may poll the jury in order to ascertain whether each juror has voluntarily entered into the verdict. In assessing an individual juror's response to questioning during a jury poll, we look to the totality of the circumstances to determine whether his answers indicate voluntary assent to the verdict.

***Commonwealth v. Carter***, 478 A.2d 1286, 1291-92 (Pa. Super. 1984) (citations omitted).

We have further explained,

It is fundamental that a criminal defendant tried before a jury is entitled to a unanimous verdict before a conviction is proper. To ensure this guarantee, the defense may request a poll of the jury to ascertain whether each juror concurs in the verdict. The purpose of the poll is to give any juror, who may possibly have been under pressure from other members of the jury to acquiesce in the verdict, an opportunity to speak out and declare to the court that the verdict as announced by the foreman was voluntarily joined in by the answering juror. Thus, our courts have found that a poll may well reveal equivocation by a juror on a verdict or a substantial doubt that the responding juror joins his colleagues in the decision. In such instances, the courts have not hesitated to reverse.

Our cases also recognize, however, that a juror's initial ambiguous, inconsistent, or evasive answer to a poll does not vitiate unanimity so long as a subsequent answer or further interrogation indicates clear and unequivocal assent to the majority vote, and there is no evidence of involuntariness or coercion.

*Commonwealth v. Hall*, 406 A.2d 765, 770 (Pa. Super. 1979) (citations omitted).

Additionally, Pennsylvania Rule of Criminal Procedure 648 states, in pertinent part: "Before a verdict, whether oral or sealed, is recorded, the jury shall be polled at the request of any party. Except where the verdict is sealed, if upon such poll there is no concurrence, the jury shall be directed to retire for further deliberations." Pa.R.Crim.P. 648(G).

In this case, the trial court polled the jury after the initial reading of the verdict. N.T., 10/16/13, at 22. At this time, Juror Two expressed disagreement with the verdict and consequently, the trial court retired the jury for further deliberations. *Id.* at 22-23. Following further deliberations,

the trial court determined that the jury was hung on Appellant's rape charge, but was unanimous as to a guilty verdict on the other charges. ***Id.*** at 29.  The trial court then polled the jury on the IDSI charge:

> THE COURT:  All right. Have a seat, sir.  We'll try it again.  Let's go.  Let's poll the jurors beginning with Count 2.
>
> THE COURT CRIER:  Yes, Your Honor.  Juror No. 1, please rise. This would be Count 2, involuntary deviate?
>
> THE COURT:  Yes, sir.
>
> THE COURT CRIER:  Juror No. 1, do you agree with or disagree with the verdict?
>
> JUROR NO. 1:  To No. 2?
>
> THE COURT CRIER:  Yes.
>
> JUROR NO. 1:  Agree.
>
> THE COURT CRIER:  Okay.  Juror No. 2, please rise.  Do you agree or disagree with the verdict?
>
> JUROR NO. 2:  Number 2, I disagree.
>
> THE COURT CRIER:  Do you agree?
>
> JUROR NO. 2:  Disagree.
>
> THE COURT CRIER:  To No. 2, now?  Involuntary deviate sexual intercourse with a child.
>
> JUROR NO. 2:  Involuntary deviate sexual intercourse with a child? Can I see that paper, please?
>
> THE COURT CRIER:  Foreperson, will you show her the form?
>
> JUROR NO. 2:  Involuntary deviate sexual intercourse with a child -- agree with it.
>
> THE COURT:  I'm sorry, I didn't hear what you said.

> JUROR NO. 2:  Yes, I have to agree with it because the question --
>
> THE COURT CRIER:  I just asked if you agree that.  Juror No. 3, please rise.  Do you agree or disagree with this verdict?

N.T., 10/16/13, at 29-31.

Based upon our review of the above-referenced portion of the trial transcript, we conclude that Juror Two's answers to the court crier's subsequent questions indicated "clear and unequivocal assent" to the guilty verdict for the charge of IDSI.  *See Hall*, 406 A.2d at 770.  We further conclude that the record reflects no evidence of involuntariness or coercion. *See id.*  Although Juror Two initially stated that she disagreed with the verdict, she unambiguously expressed her agreement with the verdict when the court crier asked for further explanation, and clarified that he was asking about the IDSI charge.  N.T., 10/16/13, at 29-31.  Therefore, the trial court did not abuse its discretion in determining that there was a unanimous guilty verdict on the IDSI charge and denying Appellant's request for a mistrial.  *See Commonwealth v. Wheeler*, 446 A.2d 892, 894-895 (Pa. 1982) (holding that a verdict was unanimous where a juror initially stated that he could not say the defendant was guilty, but later declared the defendant guilty after further questioning by the court crier).

Likewise, because Juror Two unambiguously expressed her agreement with the verdict on the IDSI charge, the trial court did not abuse its discretion

in declining to have the jury retire for further deliberations. *See* Pa.R.Crim.P. 648(G). Appellant's first and second issues do not warrant relief.

For his third issue, Appellant argues that the trial court erred in permitting the Commonwealth to introduce prior bad acts evidence of his physical abuse of Victim and his past drug use. Appellant asserts that the evidence of physical abuse was inadmissible because he had not been living with Victim for at least three years prior to when Victim reported the sexual assault. Appellant contends that the evidence of his past drug use was inadmissible because it was not relevant to his charges and consequently, was nothing more than improper character evidence.

Our standard of review is as follows:

> It is well settled that the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Hicks*, 151 A.3d 216, 224 (Pa. Super. 2016) (citations omitted), *appeal denied*, 168 A.3d 1287 (Pa. 2017).

As our Supreme Court has explained, generally, "all relevant evidence, *i.e.*, evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007). An

exception to this rule is that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Evidence of an uncharged crime, however, may be admissible for a purpose other than to show criminal propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). "This list is not exhaustive[,]" as the Supreme Court of Pennsylvania has recognized that one permissible purpose of such evidence is "to furnish the context or complete story of the events surrounding a crime[,]" *i.e.*, the *res gestae* exception. *Dillon*, 925 A.2d at 137.

Even where an exception to Rule 404(b)'s prohibition against evidence of prior bad acts applies, the evidence of other crimes is admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 (comment).

In *Dillon*, the defendant was convicted of sexually assaulting a child "for nearly four years between 1995 and 1998[.]" *Dillon*, 925 A.2d at 133. These sexual assaults, however, went unreported until 2001. *Id.* At trial, the Commonwealth introduced evidence that the defendant had physically abused

the victim's mother and brother to explain the victim's delay in reporting the sexual abuse. *Id.*

On appeal, the Supreme Court held that it was permissible under Rule 404(b) for the Commonwealth to introduce evidence that the defendant physically abused family members of the victim. *Id.* at 136-42. Specifically, the Court determined that the evidence was "relevant for purposes other than to show [Dillon's] bad character and criminal propensity." *Id.* at 139. In reaching this conclusion, our Supreme Court recognized that under Section 3105 of the Crimes Code, "[a] jury may consider evidence of a lack of prompt complaint in cases involving sexual offenses." *Id.* at 137. The Supreme Court explained:

> Section 3105 codified a common law principle recognizing that the victim of a sexual assault naturally would be expected to complain of the assault at the first safe opportunity. . . . Generally, there are three principles upon which evidence addressing the timeliness of a sexual assault complaint has been deemed relevant and admissible: (1) as an explanation of an inconsistency/silence; (2) as corroboration of similar statements; or (3) as a *res gestae* declaration.

*Id.* (citing 18 Pa.C.S.A. § 3105).

Furthermore:

> [B]oth the common law experience and the judgment of the General Assembly have led to a recognition of the relevance of the promptness of a complaint of sexual abuse, and this Court has separately recognized the reality that a sexual assault prosecution oftentimes depends predominately on the victim's credibility, which is obviously affected by any delay in reporting the abuse. Revealing the circumstances surrounding an incident of sexual abuse, and the reasons for the delay, enables the factfinder to more accurately assess the victim's credibility. Moreover, this

>Court has acknowledged that juries in sexual assault cases expect to hear certain kinds of evidence and, without any reference to such evidence during the trial, a jury is likely to unfairly penalize the Commonwealth, the party with the burden of proof.

*Id.* at 138–39 (citations omitted).

Based on this reasoning, our Supreme Court in **Dillon** concluded that the evidence: (1) "tend[ed] to show that [the victim's] experiences with [Dillon], including those assaults on family members, caused her to fear making a prompt report"; and (2) was "relevant for *res gestae* purposes, *i.e.*, to explain the events surrounding the sexual assaults." **Id.** at 139.

>Lastly, the Court stated:

>Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

*Id.* at 141 (quotations and citations omitted).

In this case, Victim accused Appellant of sexually assaulting her from 2001 through 2006, but she did not report the sexual abuse until 2009. **See** N.T., 11/14/12, at 4, 10. To explain this delay, the Commonwealth sought to introduce evidence that Appellant verbally and physically abused Victim while they lived in the same house. N.T., 11/14/12, at 4. At trial, Victim testified that Appellant verbally and physically abused her regularly for years, and that the abuse included calling her a "bitch" and "ungrateful," and hitting and

kicking her to the point that she would "ball up" in her room. N.T., 10/10/13, at 46-47, 80-81. Victim also recounted receiving a "busted lip" from Appellant. *Id.* at 81.

Given the discretionary nature of evidentiary claims, we cannot say the trial court abused its discretion in admitting the evidence of Appellant's verbal and physical abuse of Victim. Importantly, Victim testified that she waited to report the abuse, in part, "because I wanted to know I was safe. He was out of the house and long gone and I know there was no way he could get me if I would tell." *Id.* at 58. Thus, the evidence of Appellant's verbal and physical abuse of Victim served a purpose beyond demonstrating Appellant's bad character and criminal propensity, *i.e.*, the three-year gap between when Appellant stopped sexually assaulting Victim and when Victim reported the abuse. *See Dillon*, 925 A.2d at 136-42. The evidence demonstrated that Victim had reason to fear Appellant. Because the Commonwealth's case was largely based Victim's credibility, the probative value of the evidence outweighed any prejudicial effect. Accordingly, we conclude that the trial court did not abuse its discretion in admitting this evidence.

With respect to Appellant's argument that evidence of his past drug use was inadmissible because it was not relevant, Appellant did not raise this contention before the trial court. This Court has stated that "for any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the

trial court." ***Commonwealth v. Rush***, 959 A.2d 945, 949 (Pa. Super. 2008). At the hearing on the Commonwealth's motion to introduce evidence of Appellant's physical abuse of Victim and of his past drug use, Appellant only contested the admission of the evidence of his abuse of Victim. At no point during this hearing or at trial did Appellant contest the Commonwealth's presentation of evidence relating to his past drug use. ***See*** N.T., 11/14/12, at 9-15. Thus, Appellant has waived this argument on appeal. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Accordingly, Appellant's second issue does not warrant relief.

Finally, Appellant argues that the trial court erred in requiring him to register as a sex offender. "The Pennsylvania General Assembly passed [Pennsylvania's Sexual Offender Registration and Notification Act (SORNA)] as Act 111 of 2011, signed December 20, 2011. In so doing, it provided for the expiration of prior registration requirements, commonly referred to as Megan's Law, 42 Pa.C.S.A §§ 9791–9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date." ***In re J.B.***, 107 A.3d 1, 3 (Pa. 2014). On July 19, 2017, the Pennsylvania Supreme Court issued its Opinion Announcing the Judgment of the Court in ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017), which found SORNA to be punitive in nature and held that retroactive application of the registration and reporting requirements of SORNA to criminal defendants violated the *ex post facto* clauses of the United

States and Pennsylvania Constitutions. *Id.* at 1223; *see also Commonwealth v. Wood*, 208 A.3d 131, 138 (Pa. Super. 2019) (*en banc*) ("[A]pplication of SORNA to sexual offenders for offenses committed before its effective date violates the *ex post facto* clauses of the United States and Pennsylvania Constitution.").

Following *Muniz*, the General Assembly passed legislation that attempted to cure the constitutional defects of SORNA. Regarding this legislation, we have explained:

> In response to our Supreme Court's decision in *Muniz* and this Court's later decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), *appeal granted*, 190 A.3d 581 [ ] (Pa. July 31, 2018) (holding certain sexually violent predator provisions of SORNA were constitutionally infirm), the Pennsylvania General Assembly passed Acts 10 and 29 of 2018 [(SORNA II)]. The express purpose of these legislative enactments was, *inter alia*, to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood[,]" and to cure SORNA's constitutional defects by "address[ing] [*Muniz* and *Butler*]." *See* 42 Pa.C.S.A. § 9799.51(b)(1),(4).
>
> Specifically, our General Assembly modified Subchapter H's registration requirements for those offenders convicted of committing offenses that occurred on or after SORNA's effective date of December 20, 2012. The General Assembly also added Subchapter I to Title 42, Part VII, Chapter 97. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date.

*Commonwealth v. Bricker*, 198 A.3d 371, 375-76 (Pa. Super. 2018).

In this case, Appellant committed his sex offenses from 2001 to 2006. Although Megan's Law had expired and been replaced with SORNA by the time of Appellant's convictions and sentencing, the trial court ordered him to register as a sex offender pursuant to Megan's Law.  *See* N.T., 3/21/14, at 93.  Therefore, we conclude that the trial court erred in instructing Appellant to register as a sex offender pursuant to Megan's Law, and vacate Appellant's judgment of sentence only to the extent it instructs him to register as a sex offender pursuant to Megan's Law.  *See In re J.B.*, 107 A.3d at 3.

We further recognize that SORNA cannot be applied retroactively to criminal defendants for sex offenses committed prior to SORNA's effective date.  *See Wood*, 208 A.3d at 138.  Accordingly, we affirm Appellant's convictions, but vacate Appellant's judgment of sentence to the extent it instructs him to register as a sex offender under Megan's Law, and remand for the limited purpose of determining and informing Appellant of his sex offender registration and reporting requirements under Subchapter I of Acts 10 and 29 of 2018 (SORNA II).[2]  *See Bricker*, 198 A.3d at 375-76.

Judgment of sentence affirmed in part and vacated in part.  Case remanded.  Jurisdiction relinquished.

---

[2]  The Commonwealth agrees that limited remand is appropriate. Commonwealth Brief at 23.

- 15 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 5/6/2020*