# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| B.W., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 433 M.D. 2018 |
| | : | Submitted: February 12, 2020 |
| Pennsylvania State Police, | : | |
| Respondent | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE ELLEN CEISLER, Judge
HONORABLE J. ANDREW CROMPTON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                **FILED: July 6, 2020**

Presently before the Court is B.W.'s (Petitioner) Motion for Summary Relief and Entry of Judgment (Application) on his Petition for Review (Petition) in the nature of declaratory and injunctive relief filed against the Pennsylvania State Police (PSP) in our original jurisdiction. Petitioner challenges the constitutionality, as applied, of Subchapter I of the most recent enactment of the Sexual Offender Registration and Notification Act, Act of February 21, 2018, P.L. 27 (Act 10), 42 Pa.C.S. §§ 9799.10-9799.75, *as amended* by the Act of June 12,

2018, P.L. 140 (Act 29) (collectively, Act 29[1]).  Petitioner asserts various bases for the alleged unconstitutionality of subchapter I of Act 29 as applied to him, including that its provisions are punitive as applied in violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions.[2]  This is based upon the Pennsylvania Supreme Court's decision in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied*, __ U.S. __, 136 S. Ct. 925 (2019), declaring Act 29's predecessor, the Sexual Offender Registration and Notification Act[3] (SORNA), unconstitutional.  Petitioner also asserts that subchapter I of Act 29 should not apply to him because his registration requirements have expired, and subchapter I violates Article III, Section 6 of the Pennsylvania Constitution,[4] Petitioner's vested rights, and Petitioner's substantive due process rights.

Petitioner asks this Court to declare subchapter I of Act 29 unconstitutional as applied and to preliminarily and permanently enjoin PSP from requiring Petitioner to register as a sexual offender; maintaining Petitioner's registration information in the statewide sexual offender registry (Registry); and disseminating Petitioner's registration information online.  Based upon our decision in *T.S. v. Pennsylvania State Police*, __ A.3d __ (Pa. Cmwlth., No. 129 M.D. 2019, filed May 11, 2020), the application of subchapter I of Act 29 to Petitioner, who committed his crimes before the enactment of a sexual offender registration

---

[1] Petitioner refers to Act 29 as "2018 SORNA," whereas PSP refers to it as "Act 29."  For ease of discussion in relation to prior enactments, we will refer to the statute as Act 29.

[2] "No . . . *ex post facto* Law shall be passed."  U.S. CONST. art. I, § 9, cl. 3.  "No *ex post facto law* . . . shall be passed."  PA. CONST. art. I, § 17.

[3] *Former* 42 Pa.C.S. §§ 9799.10-9799.41.

[4] PA. CONST. art. III, § 6.  Article III, Section 6 provides that "[n]o law shall be revived, amended, or the provisions thereof extended or conferred, by reference to its title only, but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."  *Id.*

scheme, is *ex post facto*.  Accordingly, consistent with *T.S.*, we grant in part and deny in part Petitioner's Application.

## I.     Statutory Background

A brief overview of the history preceding Act 29 and the relevant provisions of Act 29 is helpful before addressing the Petition and the parties' arguments.  As this Court has explained:

> Megan's Law I,[5] the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter.  Megan's Law II[6] was enacted on May 10, 2000[,] in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, . . . 733 A.2d 593 ([Pa.] 1999).  Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, . . . 832 A.2d 962 ([Pa.] 2003), and the General Assembly responded by enacting Megan's Law III[7] on November 24, 2004.  The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, [(Adam Walsh Act)[8]] . . . , and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011[,] with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the [Adam Walsh Act]."  [Section 9799.10(1) of SORNA, *former*] 42 Pa.C.S. § 9799.10(1).  SORNA went into effect a year later on December 20, 2012.  Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution.  *Commonwealth v. Neiman*, . . . 84 A.3d 603, 616 ([Pa.] 2013).  However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

---

[5] *Former* 42 Pa.C.S. §§ 9791-9799.6.

[6] *Former* 42 Pa.C.S. §§ 9791-9799.7.

[7] *Former* 42 Pa.C.S. §§ 9791-9799.75.

[8] 34 U.S.C. §§ 20901-20991.  Congress enacted the Adam Walsh Act "[i]n order to protect the public from sex offenders and offenders against children, and in response to the vicious attacks by violent predators," by "establish[ing] a comprehensive national system for the registration of those offenders."  34 U.S.C. § 20901.

*Taylor v. Pa. State Police*, 132 A.3d 590, 595 n.7 (Pa. Cmwlth. 2016). Section 9799.41 of SORNA provided for the expiration of the statutory sections previously governing registration, *former* 42 Pa.C.S. § 9799.41. The Supreme Court struck down SORNA as unconstitutional in *Muniz*, 164 A.3d at 1218, and the General Assembly enacted Act 29 in response thereto.

Subchapter I of Act 29 applies to individuals who committed their crimes before the date of SORNA, such as Petitioner, whereas Subchapter H of Act 29 applies to offenders who committed their offenses after the effective date of SORNA.[9] Section 9799.52(2) of Act 29 provides that subchapter I "shall apply to all individuals who were . . . required to register with [PSP] under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired." 42 Pa.C.S. § 9799.52(2). Subchapter I of Act 29 requires offenders to register with PSP and provide information on current or intended residences, employment, and enrollment as a student. Section 9799.56(a)(1) of Act 29, 42 Pa.C.S. § 9799.56(a)(1). Offenders must appear in person annually to verify registration

---

[9] Currently pending before the Pennsylvania Supreme Court is *Commonwealth v. Lacombe* (Pa., No. 35 MAP 2018), on direct appeal from a court of common pleas, challenging the constitutionality of subchapter I of Act 29. The Supreme Court recently issued its decision in *Commonwealth v. Torsilieri*, __ A.3d __ (Pa., No. 37 MAP 2018, filed June 16, 2020), which was also a direct appeal from a court of common pleas regarding the constitutionality of subchapter H of Act 29. Because the Supreme Court was "unable to conclude based upon the record currently before [it] whether [the a]ppellee has sufficiently undermined the validity of the legislative findings supporting [r]evised [s]ubchapter H's registration and notification provisions . . . ," the Supreme Court in *Torsilieri* remanded the case for development of the factual record. *Id.* at__, slip op. at 24. The Supreme Court further concluded that this development of the factual record on remand would require a new weighing of the factors in the *ex post facto* analysis. *Id.* at __, slip op. at 40.

information, Section 9799.60(b) of Act 29, 42 Pa.C.S. § 9799.60(b), and update PSP within three days of changes to any registration information, 42 Pa.C.S. § 9799.56(a)(2). Offenders are subject to criminal prosecution for failure to comply with these requirements. 42 Pa.C.S. §§ 9799.56(d), 9799.60(e).[10] Finally, Section 9799.63 of Act 29, the Internet dissemination provision, requires PSP to post online various registration information about each offender, including photographs, addresses, vehicle registrations, and details about the triggering offense. 42 Pa.C.S. § 9799.63.

## II.   Background

Petitioner avers as follows in his Petition. Petitioner was convicted on December 20, 1995, of rape, aggravated indecent assault, and indecent assault, and was sentenced to 3½ years' to 10 years' imprisonment. (Petition ¶¶ 13-14.) Petitioner was paroled from his sentence in June 2001, began registering as a lifetime registrant under Megan's Law II, and completed his parole in February 2006. The General Assembly, in 2011, enacted SORNA, which "provided for the expiration of those portions of Megan's Law I, II, and III that had thus far survived judicial review . . . , which were no longer applicable to Petitioner." (Petition ¶ 21.) PSP enforced SORNA with respect to Petitioner. The Supreme Court then declared SORNA unconstitutional in *Muniz*. Because the prior versions of Megan's Law to which Petitioner was subject expired pursuant to the terms of

---

[10] Subchapter I also contains more stringent registration and verification provisions for sexually violent predators (SVPs) who are convicted of a sexual offense and also assessed by the State Sexual Offender Board to be SVPs "due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." Section 9799.53 of Act 29, 42 Pa.C.S. § 9799.53. Petitioner is not a SVP; thus, these provisions are not implicated here.

SORNA, there was no valid statutory registration scheme in place to require Petitioner's registration following *Muniz*. (*Id.* ¶ 26.)

Therefore, on October 5, 2017, Petitioner submitted a formal request (Request) to PSP requesting termination of his registration requirements and removal of his information from the Registry, pursuant to *Muniz*. (*Id.* ¶ 27.) PSP responded to Petitioner's Request, explaining that it would not comply with the Request while the writ of certiorari for *Muniz* was pending before the United States Supreme Court. (*Id.* ¶ 28.) On December 4, 2017, Petitioner filed his first petition for review, seeking to terminate his obligation to register under SORNA in light of *Muniz*. Shortly thereafter, PSP mailed to Petitioner a letter dated February 2, 2018, notifying him that it had concluded the decision in *Muniz* affected his registration and, therefore, PSP removed Petitioner's registration information from the Registry. (Petition ¶ 30.) By letter dated February 12, 2018, a representative of the Pennsylvania Office of Attorney General (OAG) further expressed to Petitioner that he was relieved from any obligations under SORNA. (Petition ¶ 30, Ex. B.) After receipt of the letters from PSP and the OAG, Petitioner filed a Praecipe to Discontinue his December 2017 petition for review. By a single-judge order of this Court dated February 20, 2018, the Praecipe to Discontinue was granted. (Petition ¶¶ 34-35); *B.W. v. Pa. State Police* (Pa. Cmwlth., No. 566 M.D. 2017, filed February 20, 2018).

Following the General Assembly's enactment of Act 29, by letter dated March 16, 2018, PSP notified Petitioner that he is subject to registration under subchapter I of Act 29 and required to register no later than May 22, 2018, subject to criminal penalties for noncompliance. (*Id.* ¶ 36.) Petitioner contacted PSP and the OAG, requesting that PSP not enforce subchapter I of Act 29 against Petitioner,

6

citing letters from PSP and the OAG after *Muniz*, the expiration of prior versions of the registration schemes under SORNA, and the alleged unconstitutionality of Act 29. PSP replied that Petitioner is a lifetime offender and a court order is needed in order to remove him from the Registry. Pursuant to Section 9799.41 of SORNA, which provided for the expiration of prior iterations of the registration laws, and this Court's order granting Petitioner's Praecipe to Discontinue his 2017 case, Petitioner asserts he has no further obligation to "register under any sex[ual] offender registration and notification scheme"; thus, he should not be subject to any further registration and PSP's contention otherwise is without merit. (*Id.* ¶¶ 41-43.) Further, based on *Muniz* and the letters from PSP and the OAG, Petitioner has a vested right in the termination of his registration requirements. Additionally, studies have shown that recidivism rates for sexual offenders are generally low and decrease as more time passes from the offense; thus, requiring individuals like Petitioner to register for life creates an irrebuttable presumption that he remains a danger to the community.

Petitioner asserts four different bases to challenge his registration requirement under subchapter I of Act 29: (1) Petitioner's registration requirements expired pursuant to the terms of SORNA and PSP's and the OAG's letters after *Muniz* confirming the same; (2) subchapter I of Act 29 violates Article III, Section 6 of the Pennsylvania Constitution because it seeks to revive or extend registration obligations by reference to his obligations under those now expired statutes; (3) subchapter I of Act 29 abrogates Petitioner's vested rights; (4) subchapter I of Act 29 violates Petitioner's substantive due process rights because it is not rationally related to a legitimate government interest and creates an irrebuttable presumption that Petitioner is dangerous. Based on the foregoing,

7

Petitioner seeks an order declaring that subchapter I of Act 29 does not apply to him for those reasons and PSP has no authority to continue to require Petitioner to register or to maintain his information on the Registry. Petitioner asks this Court to enjoin PSP from: requiring Petitioner to comply with Act 29; maintaining Petitioner's information on the Registry; and publishing Petitioner's information on the Internet. Petitioner immediately sought summary relief on all his claims, filing his Application the same day that he filed his Petition.

## III. Parties' Arguments

Petitioner asserts that this Court should grant his Application because subchapter I of Act 29 should not apply to him, arguing as follows.[11] Based upon the Supreme Court's holding in *Muniz*, the in-person registration requirements and the publication of Petitioner's information online under subchapter I of Act 29 constitute punishments and affirmative disabilities. Petitioner's criminal conduct occurred in 1994, predating the first Megan's Law and the passage of subchapter I of Act 29; therefore, subchapter I of Act 29 "may not be retroactively applied to [him]." (Petitioner's Brief (Br.) at 23.) SORNA provided that prior versions of Megan's Law that required Petitioner's registration expired as of December 20, 2012. *See former* 42 Pa.C.S. § 9799.41. Following *Muniz*, there are no valid registration schemes, Petitioner's registration requirements are expired and satisfied,[12] and, therefore, subchapter I, which expressly applies to offenders whose

---

[11] We have rearranged Petitioner's arguments for ease of discussion.

[12] Petitioner also asserts under this argument that his registration requirements have been satisfied, as Section 9799.75(b) of subchapter I states that "[n]othing in this subchapter shall be construed to require an individual who had previously registered with [PSP] for a sexually violent offense prior to July 9, 2000, to reregister under this subchapter if the individual's registration requirements were satisfied." 42 Pa.C.S. § 9799.75(b). Because Petitioner is not a SVP, this provision does not apply to him.

periods of registration have not expired, cannot be applied to him. Further, by defining the scope of subchapter I by reference to individuals who were required to register under former registration laws, subchapter I of Act 29 violates Article III, Section 6 of the Pennsylvania Constitution by "seek[ing] to 'revive or extend' registration obligations triggered by prior, expired laws," without reenacting them. (Petitioner's Br. at 17.) Additionally, because the statutes under which Petitioner was previously required to register are expired and unenforceable Petitioner "attained a vested right to [the] status as a non-registrant . . . , rendering [Act 29] unenforceable against him." (*Id.* at 23.) Citing to studies regarding the recidivism of sexual offenders, Petitioner asserts that sex offender recidivism rates are generally low and tend to decline as time passes after the offense, and registration and notification schemes do not generally tend to protect the public because most sex offenses are committed by family members. Therefore, although the General Assembly determined that sex offender registration is necessary to protect the public, subchapter I of Act 29 imposes an unconstitutional and irrebuttable presumption of Petitioner's continuing dangerousness in violation of Petitioner's procedural due process rights.

PSP responds that Petitioner is subject to the provisions of subchapter I of Act 29, arguing as follows. Subchapter I of Act 29 is not *ex post facto* because it is not punitive and does not retroactively increase Petitioner's punishment or abrogate a vested right. Subchapter I of Act 29 is not punitive because it addresses the Supreme Court's concerns as expressed in *Muniz.* Specifically, as opposed to SORNA, subchapter I of Act 29 does not constitute an affirmative disability or restraint, does not contain registration requirements that are sanctions historically regarded as punishment, does not promote traditional aims of punishment, and is

9

not excessive in relation to the statute's legitimate purpose. Petitioner's registration requirements under subchapter I of Act 29 have not expired by the letters PSP and the OAG sent to Petitioner following *Muniz* or by the discontinuance of his 2017 case. Act 29 does not violate Article III, Section 6 because that provision does not require that every single legislative enactment "recite all other acts that its operation may incidentally affect." (PSP's Br. at 13 (quotation omitted).) The General Assembly and the Pennsylvania Supreme Court have recognized the high risk of recidivism posed by sexual offenders and this Court should defer to that legislative judgment regarding the necessity and reasonableness of measures within Act 29 to achieve that policy. Subchapter I of Act 29 does not create an irrebuttable presumption of dangerousness and violate Petitioner's due process rights as Petitioner's registration derives from his conviction, not a finding of dangerousness, and subchapter I contains a provision allowing offenders to petition for removal from the Registry after 25 years if certain conditions are met.

Petitioner replies that subchapter I of Act 29 is punitive in effect and *ex post facto*, arguing as follows. Subchapter I of Act 29 requires in-person reporting and publication online of Petitioner's personal information. These provisions of subchapter I of Act 29 impose an affirmative disability or restraint, resemble historic punishments, promote traditional aims of punishment, and are excessive in relation to the statute's purpose. Therefore, Act 29 is punitive.

## IV. Discussion

Pennsylvania Rule of Appellate Procedure 1532(b) provides that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant

10

thereto is clear." Pa.R.A.P. 1532(b). Accordingly, where "a party's right to judgment is clear and no material issues of fact are in dispute, we may grant an application for summary relief." *Williams v. Wetzel*, 222 A.3d 49, 53 (Pa. Cmwlth. 2019) (quotation omitted).

In light of our recent decision in *T.S.*, which is dispositive of Petitioner's claims for relief, we address first the assertion that Act 29 is *ex post facto*. In *T.S.*, we analyzed the application of subchapter I to an individual like Petitioner, who committed his triggering offenses prior to the enactment of a sex offender registration scheme. The petitioner in *T.S.* committed sexual offenses in 1990 when there was no sexual offender registration scheme. Upon the petitioner's release from incarceration in 2002, he began registering as a lifetime registrant. The petitioner asserted that the application of subchapter I of Act 29 was unconstitutional in violation of the state and federal *ex post facto* clauses and in light of the Supreme Court's decision in *Muniz*.

We analyzed the entirety of subchapter I of Act 29 as applied to the petitioner under the *ex post facto* analysis set forth by the United States Supreme Court in *Smith v. Doe*, 538 U.S. 84 (2003), and used by our Supreme Court in *Muniz*. Finding first that the General Assembly had a nonpunitive intent in enacting subchapter I of Act 29, we moved to an analysis of the factors established by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine if the provisions of subchapter I of Act 29 were so punitive as to overcome the General Assembly's nonpunitive intent. *T.S.*, __ A.3d at __, slip op. at 25. In light of *Muniz*, we analyzed subchapter I of Act 29 as applied to the petitioner under these *Mendoza-Martinez* factors:

> [1.] [w]hether the sanction involves an affirmative disability or restraint, [2.] whether it has historically been regarded as punishment,

11

[3.] whether it comes into play only on a finding of scienter, [4.] whether its operation will promote the traditional aims of punishment - retribution and deterrence, [5.] whether the behavior to which it applies is already a crime, [6.] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7.] whether it appears excessive in relation to the alternative purpose assigned.

*Mendoza-Martinez*, 372 U.S. at 168-69.

We concluded that the factors weighed in favor of finding subchapter I of Act 29 punitive as applied to petitioners who committed their crimes prior to Megan's Law I. *T.S.*, __ A.3d at __, slip op. at 55. Specifically, following our Supreme Court's analysis in *Muniz* and its most recent analysis of the sexually violent predator (SVP) provisions of subchapter H of Act 29 in *Commonwealth v. Butler*, 226 A.3d 972 (Pa. 2020), we determined the provisions of subchapter I of Act 29 constituted an affirmative disability or restraint, were sanctions historically regarded as punishments, promoted traditional aims of punishment such as retribution and deterrence, and were excessive in relation to the purpose of subchapter I of Act 29.[13] We explained that the provisions of subchapter I of Act 29, which required annual in-person appearances, Section 9799.60(b) of Act 29, 42 Pa.C.S. § 9799.60(b), updates to PSP within three days of any changes in registration information, Section 9799.56 of Act 29, 42 Pa.C.S. § 9799.56(a)(2), and publication online of a registrant's personal information, Section 9799.63(c)(1)

---

[13] Although the factors on the whole weighed in favor of finding subchapter I to be punitive, we concluded that three of the *Mendoza-Martinez* factors weighed in favor of finding subchapter I of Act 29 nonpunitive. Specifically, we determined that because the sanctions of subchapter I came into play only on a finding of scienter, the behavior to which the sanctions apply were already a crime, and there is an alternative purpose to which the sanctions of subchapter I can be applied, these factors weighed in favor of finding Act 29 to be nonpunitive. *T.S.*, __ A.3d at __, slip op. at 39, 46, 49.

of Act 29, 42 Pa.C.S. § 9799.63(c)(1), were punitive as applied to an individual who had no notice at the time of commission of the crime that he would be subject to any registration. We explained:

> On the whole, balancing the factors in accordance with the analysis used by our Supreme Court in *Muniz*, we must find that five of the seven weigh in favor of finding subchapter I of Act 29 to be punitive when applied to [the p]etitioner. PSP's arguments to the contrary focus on the differences between SORNA and subchapter I of Act 29 that were intended to address the Supreme Court's decision in *Muniz*. However, these arguments overlook the fact that the requirements of SORNA or any prior registration scheme did not exist at the time of [the p]etitioner's offense. While some form of retroactive registration requirements may be constitutional, *see Smith*, 538 U.S. at 105, applying the analysis in *Muniz*, we must find the cumulative effect of the registration requirements of subchapter I of Act 29 on [the p]etitioner goes beyond imposing mere registration and is punishment. [The p]etitioner, who committed the crimes giving rise to his present obligation to register in 1990, could not "have fair warning" of the applicable law that now mandates his registration and the terms thereof. *Peugh* [*v. United States*], 569 U.S. [530,] 544 [(2013)]. His right to relief on these *ex post facto* claims is not premised in a "right to less punishment, but the lack of fair notice and governmental restraint" that occurred when the General Assembly "increase[d] punishment beyond what was prescribed when the crime was consummated." *Weaver* [*v. Graham*], 450 U.S. [24,] 30 [(1981)]. Accordingly, we determine that the *Mendoza-Martinez* factors weigh in favor of finding subchapter I of Act 29 to be punitive as applied to [the p]etitioner under the *Ex Post Facto* clause of the United States Constitution.

*Id.*, __ A.3d at __, slip op. at 55-56. We concluded that subchapter I of Act 29 was unconstitutional as applied to the petitioner, but stated that we were unable to grant the relief of permanent removal from the Registry, as only the unconstitutionality of subchapter I of Act 29 as applied was before us. *Id.* at __, slip op. 56. Accordingly, we granted in part and denied in part the petitioner's request for

13

declaratory and injunctive relief and directed PSP not to apply subchapter I of Act 29 to the petitioner, resulting in his removal from the Registry. *Id.*

Following our holding in *T.S.*, the application of subchapter I to Petitioner in this case is unconstitutional in violation of the prohibition against *ex post facto* laws. Like the petitioner in *T.S.*, Petitioner here committed his crimes prior to the enactment of a sexual offender registration scheme and, therefore, had no fair notice or warning of the type of extensive statutory requirements that would govern his registration. Although Petitioner was convicted for his crimes in December 1995, after Megan's Law I was enacted, our focus for an *ex post facto* analysis "**is the date of the offense**." *T.S.*, __ A.3d at __, slip op. at 21 (quoting *Commonwealth v. Wood*, 208 A.3d 131, 136 (Pa. Super. 2019) (emphasis added)). While Petitioner does not aver in his Petition the date of commission of his crime, both parties acknowledge that his conduct occurred prior to 1995, given the date of his arrest in 1994. (*See* PSP's Br. at 1; Petitioner's Br. at 30.) Moreover, even if the law in effect at the time of conviction was the relevant consideration, Megan's Law I went into effect 180 days after its enactment on October 24, 1995, which is after the date of Petitioner's conviction. Accordingly, given Petitioner's lack of notice at the time he committed his crimes, the application of subchapter I of Act 29 to him is *ex post facto*.

Petitioner also seeks permanent relief in the removal of his information from the Registry. As in *T.S.*, we can only grant relief as to what is before us, which is whether Petitioner's registration under subchapter I of Act 29 is constitutional. We conclude that it is not. Accordingly, we grant in part and deny in part Petitioner's Application and direct PSP not to apply subchapter I of Act 29 to Petitioner, which

14

will result in his removal from the Registry. Because we grant Petitioner the relief he seeks on these grounds, we do not reach his alternative arguments.

**V.    Conclusion**

Based upon this Court's recent decision in *T.S.*, following our Supreme Court's decision in *Muniz*, the application of subchapter I of Act 29 to Petitioner, who committed his crimes before the enactment of a registration scheme, is unconstitutional in violation of the *Ex Post Facto* Clause of the United States Constitution. Accordingly, we direct PSP not to apply subchapter I of Act 29 to Petitioner, which will result in his removal from the Registry. Accordingly, we grant in part and deny in part Petitioner's Application.

—————————————————————
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

B.W.,                                    :
                    Petitioner           :
                                         :
        v.                               :    No. 433 M.D. 2018
                                         :
Pennsylvania State Police,               :
                    Respondent           :

## O R D E R

**NOW**, July 6, 2020, B.W.'s (Petitioner) Motion for Summary Relief and Entry of Judgment (Application) is hereby **GRANTED in part**. Judgment is entered in favor of Petitioner, declaring the application of subchapter I of the Act of February 21, 2018, P.L. 27 (Act 10), 42 Pa.C.S. §§ 9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L. 140 (Act 29) (collectively, Act 29) unconstitutional, as it is in violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions as applied to Petitioner. The Pennsylvania State Police is hereby **ORDERED** not to apply subchapter I of Act 29 to Petitioner, which will result in his removal from the sexual offender registry. To the extent Petitioner seeks relief in the form of permanent removal from the sexual offender registry, the Application is **DENIED**.

_____
**RENÉE COHN JUBELIRER,** Judge