J-S22023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LONNIE DUSTIN HAGGERTY | : | |
| | : | |
| Appellant | : | No. 1305 WDA 2023 |

Appeal from the PCRA Order Entered October 12, 2023
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0000761-2005

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.: **FILED: September 27, 2024**

Lonnie Dustin Haggerty ("Haggerty") appeals *pro se* from the order dismissing his serial petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm in part, as we conclude all but one of Haggerty's issues are time-barred by the PCRA. However, we reverse in part, as we hold Haggerty's challenge to his Megan's Law III[2] registration requirements is not subject to the PCRA nor its timeliness requirements. We further hold the Megan's Law III registration requirements no longer apply to Haggerty, but he is required to comply with Subchapter I of the Sexual

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[2] *See* Act 152 of 2004.

Offender Registration and Notification Act ("SORNA II").[3]  We remand for proceedings consistent with this memorandum.

The Commonwealth charged Haggerty with involuntary deviate sexual intercourse with a person less than sixteen years of age ("IDSI"), sexual assault, and related offenses for crimes he committed in 2004 against the male victim ("the Victim"), who was then fourteen years old.  Haggerty initially pleaded guilty, but the trial court granted his request to withdraw his plea.  The charges then proceeded to a jury trial in 2006.  Haggerty was represented by Donald McKee, Esquire ("Trial Counsel"), the Chief Public Defender of Indiana County.  The Victim testified at trial, describing the sexual assault.  Relevant to Haggerty's instant PCRA claims, the Victim also stated he did not immediately tell anyone about the incident because he was scared and "it never happened to [him] before."  N.T., 4/3/06, at 39.  Haggerty did not testify or present any evidence.

The jury found Haggerty guilty of IDSI, sexual assault, statutory sexual assault, indecent assault, corruption of minors, and unlawful contact with a minor.  On August 11, 2008, the trial court imposed an aggregate sentence of nine to twenty years' imprisonment.  The court also determined Haggerty was a sexually violent predator ("SVP") and subject to lifetime registration under

---

[3] **See** 42 Pa.C.S.A. §§ 9799.10-9799.41.

the then-in effect Megan's Law III. Another attorney, Stanley Fudor, Esquire ("Sentencing Counsel"), represented Haggerty at sentencing.

Haggerty did not file a post-sentence motion or direct appeal, but subsequently filed a PCRA petition while represented by yet another attorney. In October 2007, the PCRA court reinstated Haggerty's direct appeal rights *nunc pro tunc*, but, pertinently, not his post-sentence rights. Haggerty filed an appeal, and this Court affirmed his judgment of sentence on August 11, 2008. *See Commonwealth v. Haggerty*, 961 A.2d 1275 (Pa. Super. 2008) (unpublished memorandum). He did not file a petition for allowance of appeal in our Supreme Court.[4]

On June 3, 2009, Haggerty filed a *pro se* first, timely PCRA petition.[5] The PCRA court appointed Mark Bolkovac, Esquire ("First PCRA Counsel"), who filed an amended PCRA petition, which: (1) presented new claims of Trial Counsel's and Sentencing Counsel's ineffective assistance; and (2) set forth Haggerty's *pro se* claims but opined they lacked merit. Ultimately, the PCRA

---

[4] Ten years later, Haggerty filed a petition for leave to file a petition for allowance of appeal *nunc pro tunc*. Our Supreme Court denied it in 2018. *See Commonwealth v. Haggerty*, 2018 PA LEXIS 5319 (order) (Pa. 2018).

[5] As Haggerty's prior PCRA petition resulted in the reinstatement of his direct appeal rights *nunc pro tunc*, we consider this June, 3 2009 petition to be his first PCRA petition for timeliness purposes. *See Commonwealth v. Callahan*, 101 A.3d 118, 122 (Pa. Super. 2014).

court denied relief, and Haggerty appealed.[6] This Court affirmed the denial of PCRA relief, and our Supreme Court denied his petition for allowance of appeal. *See Haggerty*, 53 A.3d 937, *appeal denied*, 57 A.3d 68.

In 2016, Haggerty filed several *pro se* petitions (collectively, "the second PCRA petition"). The PCRA court addressed the second PCRA petition and denied IT, finding Haggerty waived the claims he could have brought on direct appeal, and his remaining claims were untimely. Haggerty filed an appeal, and this Court affirmed the denial order. *See Commonwealth v. Haggerty*, 181 A.3d 454 (Pa. Super. 2017) (unpublished memorandum).

On June 12, 2023, Haggerty filed the underlying *pro se* PCRA petition, as well as a motion for leave to file a post-sentence motion *nunc pro tunc*, and a forty-eight page post-sentence motion. Haggerty's sixty-page *pro se* PCRA

---

[6] Initially, on July 28, 2020, following an evidentiary hearing, the PCRA court permitted Haggerty to supplement the record or request a new hearing with regard to his SVP determination, but denied relief on the remaining PCRA issues presented. Haggerty nevertheless filed an appeal, and this Court quashed the appeal as improperly taken from an interlocutory order. *See Commonwealth v. Haggerty*, 31 A.3d 733 (Pa. Supe. 2011). Thereafter, based on Haggerty's assertion he would not seek a new SVP hearing, the PCRA court issued an order determining that its July 2020 order was final. Haggerty then filed a second appeal, which this Court addressed. *See Commonwealth v. Haggerty*, 53 A.3d 937 (Pa. Super. 2012) (unpublished memorandum), *appeal denied*, 57 A.3d 68 (Pa. 2012).

Additionally, we note that in 2013, Haggerty filed a petition for a writ of *habeas corpus* in the United States District Court in the Western District of Pennsylvania. He raised multiple claims that Trial Counsel provided ineffective assistance, and that his sentence was illegal and violated double jeopardy concerns. The court dismissed Haggerty's petition. *See Haggerty v. Burns*, 2013 WL 1891355 (W.D.Pa. 2013).

petition set forth at least eighty-seven numbered paragraphs, each alleging, and at times conflating: various errors in the pretrial, trial, sentencing, direct appeal, or PCRA proceedings; the ineffective assistance of his attorneys; and interference by prior counsel, the Commonwealth, or the trial or PCRA courts in the presentation of his past PCRA claims.[7]

Nevertheless, we discern the following general allegations, repeated often in Haggerty's PCRA petition. Haggerty raised: the denial of a preliminary hearing; the improper reinstatement of all his charges following the withdrawal of his guilty plea; multiple allegations that Trial Counsel failed to take particular action at trial; Sentencing Counsel's failure to preserve his post-sentence rights *nunc pro tunc*; the trial court's failure to reinstate his post-sentence rights; and the violation of his double jeopardy rights at sentencing. Haggerty also repeatedly argued First PCRA Counsel improperly incorporated his *pro se* claims by reference, violating the rule against hybrid representation and rendering the PCRA court's denial of his petition a legal nullity. Thus, Haggerty claimed, those PCRA claims remain pending. Haggerty also averred all of these issues amounted to breakdowns in the court's operations that entitled him to relief.

---

[7] We observe Haggerty's *pro se* filings, including his brief on appeal, are rambling and raise numerous bald issues, each lacking relevant factual background and a developed discussion. ***See also Haggerty***, 181 A.3d 454 (unpublished memorandum at *5 n.7) (stating Haggerty's "brief is defective," as "[t]he argument section is rambling, difficult to follow, and lacks coherent legal analysis of the issues presented").

Next, Haggerty invoked the PCRA's governmental interference timeliness exception,[8] claiming that the Commonwealth committed a ***Brady*** violation[9] by failing to: provide "impeachment material (witness statements);" disclose that the Victim previously made abuse allegations against his father; and reveal that the Victim "was the subject of a juvenile police complaint in New York" "involving sexual assault of two younger juvenile males."  PCRA Petition, 6/12/23, at 9, 23-24.

Haggerty also stated the PCRA's newly-discovered fact exception applied.[10]  First, he alleged that on July 12, 2022, he received, following several denials in his second PCRA petition proceedings, a transcript of a 2008 trial against a defendant surnamed Juart.  Haggerty averred the Victim also accused Juart of sexual offenses and at Juart's trial, gave testimony that contradicted his testimony at Haggerty's trial, that he had not previously suffered sexual abuse or assault.  Haggerty extrapolated that the Victim gave perjured testimony at his trial.

Second, with respect to the newly-discovered fact exception, Haggerty asserted that on August 18, 2022, he received his case file from the Public Defender's Office ("PD's Office"), who represented him at trial.  Haggerty

---

[8] ***See*** 42 Pa.C.S.A. § 9545(b)(1)(i).

[9] ***See Brady v. Maryland***, 373 U.S. 83 (1963).

[10] ***See*** 42 Pa.C.S.A. § 9545(b)(1)(ii).

asserted this file included a written statement by the Victim, which Haggerty had not seen before, that "differed substantially from a subsequent statement given to [Children and Youth Services ("CYS")] investigators and the testimony given at trial."[11] *Id*. at 8. Haggerty averred Trial Counsel could have impeached the Victim with these statements at trial to undermine his credibility.

Finally, Haggerty alleged his SVP determination and lifetime registration requirements under Megan's Law III were illegal, as the Pennsylvania Supreme Court held Megan's Law III was unconstitutional. *Id*. at 21 (*citing* **Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013) (holding Megan's Law III violated the "single subject" rule of Article III, Section 3 of the Pennsylvania Constitution)).

The Commonwealth filed a response to the petition, arguing that all of Haggerty's claims were untimely under the PCRA. The PCRA court agreed and issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the petition without a hearing. On October 12, 2023, the PCRA court dismissed Haggerty's *pro se* petition. Haggerty filed a timely *pro se* notice of appeal. The PCRA court has issued an opinion.[12]

---

[11] Haggerty provided no other information about the Victim's written statement or the CYS statement.

[12] The PCRA court did not require Haggerty to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Haggerty presents the following issues for our review:

A.  Whether the PCRA court erred by dismissing [Haggerty's] challenges to the legality of the sex offender registration requirements imposed upon him under void Megan's Law III as untimely under the PCRA?

B.  Whether the PCRA court erred in its conclusion that [Haggerty] failed to meet the newly-discovered facts and governmental interference exceptions to the PCRA time-bar dismissing his petition as untimely?

C.  Whether the PCRA court erred in denying [Haggerty's] petition without an evidentiary hearing where the timeliness exceptions presented and supporting exhibits attached raised material issues of fact requiring an evidentiary hearing?

D.  Whether the PCRA court erred in its conclusion that the claims presented were previously litigated?

E.  Whether previous breakdowns in the processes and operations of the PCRA court not attributable to [Haggerty] that occurred during litigation of [Haggerty's] first and second timely-filed PCRA petitions create an extraordinary circumstance that warrants *nunc pro tunc* reinstatement of [Haggerty's] PCRA rights?

F.  Whether the PCRA court's order of July 28, 2010 denying [PCRA] relief, and all subsequent orders entered by the trial and appellate courts based upon it are legal nullities due to the underlying hybrid representation that occurred creating an extraordinary circumstance which warrants reinstatement of [Haggerty's] PCRA rights *nunc pro tunc* due to the breakdown in the processes and operations of the courts that occurred not attributable to [Haggerty]?

G.  Whether a patently illegal sentencing order is amenable to a trial court's exercise of its inherent powers of correction as a patent and obvious mistake pursuant to **Commonwealth v. Holmes**, . . . 933 A.2d 57 (Pa. 2007), despite the purported statutory timeliness limitations placed upon a trial court's constitutionally-derived authority by 42 Pa.C.S.A. § 9545(b)(1) of the PCRA in order to effect justice?

Haggerty's Brief at 4-6 (unnecessary capitalization omitted).[13]

In his first issue, Haggerty asserts the PCRA court[14] erred in dismissing his challenge to his SVP designation and registration requirements, where **Neiman**, 84 A.3d 603, held that Megan's Law III was no longer valid. **See** Haggerty's Brief at 53. Haggerty's issue presents questions of law, and thus our scope of review is plenary, and we undertake *de novo* review of the PCRA court's legal determinations. **See Commonwealth v. Muniz**, 164 A.3d 1189, 1195 (Pa. 2017) (*plurality*).[15]

---

[13] As stated above, Haggerty's overlong brief is fragmented, rambling and difficult to follow. We note with disapproval that Haggerty's eighty-two page brief far exceeds the word limit set forth in our Rules of Appellate Procedure. **See** Pa.R.A.P. 2135(a)(1) (providing that a principal brief shall not exceed 14,000 words, and a party shall file a certificate of compliance with the word count limit if the principal brief is longer than 30 pages). Haggerty raises numerous disjointed claims, each without a developed discussion of the factual context or relevant law. Haggerty also repeats arguments throughout the seven issues presented in his brief. For ease of analysis, we review the issues in the order Haggerty presents them in his brief, while acknowledging he repeats overlapping arguments throughout the brief.

[14] Although we hold, *infra*, that Haggerty's Megan's III challenge is not subject to the PCRA, for ease of review we will refer to the court, which ruled on his petition, as the "PCRA court."

[15] Although the concurring opinion in **Muniz** took "issue with the lead opinion's position that Pennsylvania's *ex post facto* clause grants greater protection than the federal *ex post facto* clause," the concurrence agreed "that SORNA violates federal and state *ex post facto* prohibitions." **Commonwealth v. Wood**, 208 A.3d 131, 135 n.8 (Pa. Super. 2019) (*en banc*). Accordingly, this latter, agreed-upon holding has precedential value. **See id**.

We first review the history of the relevant sexual offender registration statutes, which culminated with the current law, SORNA II. The Pennsylvania General Assembly enacted Megan's Law III in November 2004. Thereafter:

> [In 2013,] Megan's Law III was . . . struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution [in **Neiman**, 84 A.3d at 616]. However, by the time it was struck down, Megan's Law III had been replaced by SORNA [I].

**Commonwealth v. Cosby**, 224 A.3d 372, 428 (Pa. Super. 2019) (citation omitted), *vacated on other grounds*, 252 A.3d 1092 (Pa. 2021). In the 2017 **Muniz** decision, the Pennsylvania Supreme Court determined: (1) SORNA I is punitive in nature; and (2) the retroactive application of its registration provisions violates the *ex post facto* clauses of the Pennsylvania and United States Constitutions. **See Muniz**, 164 A.3d at 1193.

In response to **Muniz**, "our General Assembly passed SORNA II, which became effective on June 12, 2018." **Cosby**, 224 A.3d at 429. SORNA II is divided into two subchapters: "Subchapter H governs offenders whose triggering crimes were committed on or after December 20, 2012. Subchapter I applies retroactively to those whose offenses occurred before that date." **Commonwealth v. Lacombe**, 234 A.3d 602, 628 (Pa. 2020) (footnote omitted). Under Subchapter I, a person designated to be an SVP is subject to lifetime registration. **See** 42 Pa.C.S.A. § 9799.55(b)(3)-(4). In **Lacombe**, our Supreme Court held that the registration requirements in Subchapter I are not punitive and thus retroactive application of those requirements does

not violate our constitutional *ex post facto* rules. **See Lacombe**, 234 A.3d at 626-27. **Lacombe** further held that that a challenge to a sexual offender registration statute could be brought outside the PCRA. **See id**. at 618.

Haggerty argues the PCRA court erred in dismissing his challenge to his SVP designation and registration requirements under Megan's Law III, where that statute is no longer valid. Haggerty also contends that under **Lacombe**, this challenge was not subject to the PCRA or its timeliness requirements. Haggerty then posits that the question of whether Subchapter I of SORNA II can apply retroactively "has yet to be . . . addressed by our Supreme Court" and should be developed in the first instance before the PCRA court. Haggerty's Brief at 54. However, Haggerty also contends an offender who was subjected to Megan's Law III "cannot lawfully be considered an 'existing registrant' [under] SORNA II based upon acts rendered null and void." **Id**. at 54-55 (emphasis omitted). Ultimately, Haggerty requests remand to the PCRA court "for further proceedings concerning the applicability . . . of SORNA II, Subchapter I to void acts taken under Megan's Law III [*sic*]." **Id**. at 56.[16]

The PCRA court found that Haggerty's Megan's Law III challenge was untimely under the PCRA's filing requirements. After careful review of the

---

[16] The Commonwealth now agrees that in **Lacombe**, our Supreme Court held the PCRA was not the exclusive method for challenging sexual offender registration statutes. **See** Commonwealth's Brief at 54. However, the Commonwealth maintains that Haggerty is subject to the registration requirements of Subchapter I of SORNA II.

above authority, we disagree. Instead, Haggerty's claim, despite the fact that he included it in a PCRA petition, was not subject to the PCRA nor its timeliness requirements. *See Lacombe*, 234 A.3d at 618 (declining to hold "the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes").[17] Thus, the PCRA court had jurisdiction to consider Haggerty's issue.

On the merits, we agree with Haggerty that he is no longer subject to Megan's Law III, as our Supreme Court struck down that law eleven years ago. *See Neiman*, 84 A.3d at 616.[18] We disagree, however, with Haggerty's claims that his SVP designation cannot stand and he may be exempt from Subchapter I. Contrary to his argument, the applicability of SORNA II to his case has been settled, as the *Lacombe* Court held that Subchapter I does not constitute criminal punishment and its retroactive application does not violate *ex post facto* concerns. *See Lacombe*, 234 A.3d at 626-27.

Furthermore, Section 9799.55(b)(3) of Subchapter I specifically imposes lifetime registration on an SVP. *See* 42 Pa.C.S.A. § 9799.55(b)(3). An SVP, in turn, is defined as:

---

[17] Thus, although Haggerty previously challenged, in his first PCRA petition, his SVP determination, the PCRA's prohibition of previously litigated claims does not apply. *See* 42 Pa.C.S.A. § 9543(a)(3). In any event, Haggerty now relies on new, intervening law that was not in effect at the time of his first challenge.

[18] We note that Haggerty has remained in state custody since his sentencing.

> [A] person who has been convicted of a sexually violent offense and who is determined to be a sexually violent predator under section 9799.58 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses or who has ever been determined by a court to have a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses **under a former sexual offender registration law of this Commonwealth**.

42 Pa.C.S.A. § 9799.53 (emphasis added).  As the trial court determined, in 2006, that Haggerty met the criteria for an SVP under Megan's Law III, he remains an SVP for purposes of Subchapter I.

In light of the foregoing discussion, we reverse in part the portion of the PCRA court's order that dismissed Haggerty's claim that Megan's Law III no longer applies to him.  We hold Haggerty is not subject to the registration requirements of Megan's Law III, but he must comply with the applicable sections of Subchapter I of SORNA II.  We therefore remand for the PCRA court to provide notification of Haggerty's registration requirements consistent with current law.

The remainder of Haggerty's issues on appeal concern the PCRA court's dismissal of his numerous claims of trial court and PCRA court error, ineffective assistance of counsel, and governmental interference.  Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level.  This review is limited to the findings of the PCRA court and the evidence of record.  We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.  This Court may affirm a PCRA court's decision on any grounds if the

record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is de novo and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

Under the PCRA, any petition, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final. *See* 42 Pa.C.S.A. § 9545(b)(1). A judgment of sentence becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States, the Supreme Court of Pennsylvania, or at the expiration of time for seeking review. *See* 42 Pa.C.S.A. § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

On August 11, 2008, this Court affirmed Haggerty's judgment of sentence. As Haggerty did not timely seek allowance of appeal from the Pennsylvania Supreme Court, his judgment of sentence became final thirty days later, on September 10, 2008.[19] *See* Pa.R.A.P. 1113(a) (stating a petition for allowance of appeal shall be filed within thirty days of the Superior

---

[19] *See* n.4, *supra*.

Court order sought to be reviewed). As a result, Haggerty had one year from that date, until September 10, 2009, to timely file a PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). As the instant petition was filed on June 12, 2023, it is facially untimely.

Nevertheless, Pennsylvania courts may consider an untimely PCRA petition if the petitioner explicitly pleads and proves one of three exceptions set forth under section 9545(b)(1). These exceptions are as follows:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition attempting to invoke one of these exceptions "shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). Our Supreme Court has emphasized that "it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." *Commonwealth v. Marshall*, 947 A.2d 714, 719 (Pa. 2008) (citation omitted).

- 15 -

Finally, to be eligible for relief, the PCRA requires "[t]hat the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). Section 9544 provides in relevant part:

(a) . . . [A]n issue has been previously litigated if:

* * * *

(2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or

(3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence.

(b) . . . [A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.

42 Pa.C.S.A. § 9544(a)(2)-(3), (b).

In his second issue, Haggerty challenges the PCRA court's finding that neither the governmental interference nor newly-discovered fact exceptions applied. "[T]o establish the governmental interference exception, a petitioner must plead and prove: (1) the failure to previously raise the claim was the result of interference by government officials, and (2) the petitioner could not have obtained the information earlier with the exercise of due diligence." *Commonwealth v. Kennedy*, 266 A.3d 1128, 1135 (Pa. Super. 2021).

To establish a *Brady* violation, a defendant must prove: "[1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued."

- 16 -

*Commonwealth v. Spotz*, 18 A.3d 244, 276 (Pa. 2011) (citation omitted). A "*Brady* violation may satisfy [the] governmental interference exception, but 'the petitioner must plead and prove that the failure to previously raise these claims was the result of interference by government officials, and that the information could not have been obtained earlier with the exercise of due diligence.'" *Commonwealth v. Williams*, 244 A.3d 1281, 1289 (Pa. Super. 2021) (citation omitted).

To satisfy the newly-discovered fact exception, a PCRA petition must allege, and the petitioner must prove, "that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S.A. § 9545(b)(1)(ii). The due diligence inquiry required by section 9545(b)(1)(ii) is fact-sensitive and dependent upon the circumstances presented. *See Commonwealth v. Burton*, 121 A.3d 1063, 1070 (Pa. Super. 2015) (*en banc*). "[D]ue diligence requires neither perfect vigilance nor punctilious care, but rather it requires reasonable efforts by a petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." *Id*. at 1071.

Haggerty claims that his instant PCRA petition met both the governmental interference and newly-discovered fact timeliness exceptions. First, he avers the following claims properly invoked the governmental interference exception: (1) his "belated discovery" of the Commonwealth's *Brady* violations; (2) the Commonwealth's failure to disclose the Victim's

"perjured testimony" at his trial "once it became known due to the subsequent trial" against Juart; (3) the PCRA court's denial, in 2016 during the litigation of his second PCRA petition, of his request for Juart's trial transcript; (4) the prior PCRA court's "failure to recognize" that First PCRA Counsel's incorporation of his *pro se* claims amounted to improper hybrid representation; (5) the PCRA court's failure to rule on the merits of his illegal sentence and double jeopardy claims; (6) the Superior Court's failure to *sua sponte* correct the illegal sentences; and (7) the trial court's failure, in 2007, to reinstate his post-sentence motion rights *nunc pro tunc*. Haggerty's Brief at 33-34.

Second, Haggerty alleges the following claims satisfied the newly-discovered fact exception: (1) the Victim's "perjured testimony regarding no prior sexual abuse . . . was previously unknown and could not have been known until receipt of the Juart transcript on July 12, 2022;" (2) the Victim's "previous abuse allegations" against the Victim's father, which were also not known until receipt of the Juart trial transcript; (3) information provided by Juart that the Victim was "the subject of a juvenile police complaint in . . . New York . . . for sexual misconduct against two younger males;" and (4) the inconsistency between the Victim's testimony at Haggerty's trial with "statements previously given by Commonwealth witnesses in their handwritten and CYS statements received on August 18, 2022." *Id*. at 35. Haggerty also claims the PCRA court erred in holding that a claim presented

under a PCRA timeliness exception must be filed within sixty days — not one year — of when the claim could have been presented.

In dismissing Haggerty's petition, the PCRA court found that the petition was untimely, none of the PCRA's timeliness exceptions applied, and additionally, some of Haggerty's claims were previously litigated or waived. The PCRA court reasoned that his issues "relate to information that has been in existence, and thus available . . . for more than a decade and in some instances, more than fifteen . . . years. [Haggerty] has filed various petitions and motions previously . . . in which these issues were either addressed or" not raised. PCRA Court Opinion, 10/25/23, at 7 (unnecessary capitalization omitted). With respect to Haggerty's various claims of trial court and prior PCRA court error, as well as the ineffective assistance of counsel, the PCRA court determined Haggerty "had numerous opportunities to challenge and appeal those decisions." *Id*. at 8-9.

With regard to Haggerty's governmental interference claim, that the Commonwealth committed a ***Brady*** violation by not providing witnesses statements, the PCRA court reasoned: Haggerty "asserts that these statements were in his file with the [PD's O]ffice. The fact that his counsel had the statements clearly discredits this claim." ***Id***. (unnecessary capitalization omitted). The PCRA court also rejected Haggerty's newly-discovered fact claim, concerning Juart's trial transcript, as "nonsensical:"

> [T]he Juart trial . . . occurred after [Haggerty's] trial. This court agrees with the Commonwealth [that] even if you take

> [Haggerty's] assertions as true, the [V]ictim's testimony during [Haggerty's] trial[,] that nothing like this had happened before to him[,] does nothing to change the fact that the jury convicted [Haggerty]. The allegations . . . against Juart were not made [by the Victim] until August of 2007, . . . more than a year after [Haggerty's] trial. . . .

*Id*. at 8-9 (unnecessary capitalization omitted). The PCRA court further stated that Juart ultimately pleaded guilty to these allegations. *See id*. at 9.

After review, we conclude that the PCRA court's determinations, that Haggerty's numerous claims were either previously litigated, waived, or time-barred, are supported by the record and free of error. With respect to Haggerty's claims that the trial court, prior PCRA courts, and this Court erred in their rulings on his prior petitions for relief, Haggerty could have raised these issues in those proceedings or in the appeals therefrom. Accordingly, those issues are waived from PCRA review. *See* 42 Pa.C.S.A. § 9543(a)(3).

Additionally, Haggerty does not address the PCRA court's reasoning that regardless of what occurred in Juart's subsequent criminal matter, at Haggerty's trial, the Victim testified about the sexual assault, the jury presumably credited his testimony, and the jury found Haggerty guilty of all six charges presented, including IDSI and sexual assault. Furthermore, neither Haggerty's PCRA petition nor brief explain the context of the Victim's testimony at Juart's trial; instead, Haggerty baldly claims that at his trial, the Victim gave "perjured testimony regarding no prior sexual abuse history." Haggerty's Brief at 35. Accordingly, we do not disturb the PCRA court's finding

that Haggerty did not properly invoke the governmental interference exception.

Haggerty also does not address the PCRA court's reasoning, that the alleged missing statements by the Victim and the CYS statements were included in Trial Counsel's file, and thus the Commonwealth did not improperly withhold them under **Brady**. **See Spotz**, 18 A.3d at 276. In any event, Haggerty wholly fails to explain either the contents of the statements or the trial evidence that they allegedly contradicted. Instead, Haggerty vaguely refers to "statements previously given by [unnamed] Commonwealth witnesses in their hand-written and CYS statements." Haggerty's Brief at 35. Similarly, Haggerty provides no discussion to support his bald claims that the Commonwealth withheld information that the Victim accused his father of abuse and the Victim himself was the subject of a New York sexual misconduct charge. He presents no legal authority why these facts alone, if true, would affect his case or conviction. **See** Pa.R.A.P. 2119(a) (providing the argument shall include such discussion and citation of authorities as are deemed pertinent"). Accordingly, we do not disturb the PCRA court's finding that Haggerty did not properly invoke the newly-discovered fact exception. In sum, Haggerty's second issue does not merit relief.[20]

_____

[20] In its analysis, the PCRA court incorrectly stated that any PCRA timeliness exception must be raised within sixty days of the date it could have been presented. **See** PCRA Court Opinion, 10/25/23, at 9; **see also** 42 Pa.C.S.A.
*(Footnote Continued Next Page)*

In his third issue, Haggerty avers the PCRA court erred in dismissing his PCRA petition without a hearing. The right to an evidentiary hearing on a post-conviction petition is not absolute. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. *Id*.

Haggerty insists that his claims: raised material issues of fact; "presented a strong case for *nunc pro tunc* relief given the previous breakdowns" in the courts, including "throughout the litigation of two timely PCRA petitions previously overlooked by the courts;" and required an evidentiary hearing and witnesses. Haggerty's Brief at 41-42.

We incorporate our above discussion and reiterate the PCRA court properly concluded that Haggerty's PCRA claims were waived, previously litigated, or time barred. Accordingly, Haggerty has not shown that an evidentiary hearing was required. *See Miller*, 102 A.3d at 992. No relief is due on this third issue.

In his fourth issue, Haggerty avers the PCRA court erred in concluding his claims were previously litigated or waived. He maintains that a "previously presented" claim, that was "never properly addressed" by the PCRA court,

---

§ 9545(b)(2). However, this misstatement does not affect our conclusion that Haggerty is not entitled to relief, as he has not shown that the Commonwealth withheld the statements or that the subsequent testimony given by the Victim, in another criminal matter, should disturb Haggerty's convictions in this case.

- 22 -

"does not automatically equate to a 'previously litigated' claim" under section 9544(a). Haggerty's Brief at 48. Haggerty reasons that "[a] previous dismissal as 'untimely' is not a ruling on the merits of the issue.'" *Id*. at 49 (emphasis omitted) (*citing* **Commonwealth v. Stark**, 658 A.2d 816, 819 (Pa. Super. 1995)). With respect to waiver, Haggerty states he "has consistently couched his claims as ineffectiveness claims [*sic*]." Haggerty's Brief at 49.

As stated above, the PCRA court found some of Haggerty's issues were waived because they "related to information that has been in existence" for more than ten years, and Haggerty could have included them in his prior petitions. PCRA Court Opinion, 10/25/23, at 7. The PCRA found other claims were previously litigated because Haggerty did raise them and they were addressed. **See id**.

After review, we conclude that the PCRA court's determination is supported by the record and free of error. As stated above, the PCRA provides that an issue has been previously litigated if: (1) "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or [(2)] it has been raised and decided in a proceeding collaterally attacking the conviction or sentence." 42 Pa.C.S.A. § 9544(a)(2)-(3).

We determine the decision in **Stark**, 658 A.2d 816, upon which Haggerty relies, is distinguishable. First, this Court issued the **Stark** decision in 1995, before the 1996 amendments to the PCRA, which presently govern.

Furthermore, the procedural posture in **Stark** differs from the one presented here. In **Stark**, this Court dismissed the defendant's direct appeal as untimely filed. **See id**. at 817. The defendant then filed a PCRA petition, which claimed, *inter alia*, that the Commonwealth should specifically perform certain provisions of his plea agreement. **See id**. at 818. The PCRA court dismissed the petition on the basis that the issues were previously litigated. **See id**. at 817-18. On appeal, this Court disagreed, reasoning that: (1) the Superior Court's dismissal of the **direct appeal** was not a ruling on the merits of the issue under the meaning of section 9544(a)(2); and (2) there was no prior proceeding collaterally attacking the conviction or sentence, under section 9544(a)(3). **See id**. at 819.

Here, unlike the petitioner in **Stark**, Haggerty had a direct appeal on the merits, and has filed numerous PCRA petitions, which have been denied. Contrary to Haggerty's argument, the denials of his prior PCRA claims, whether on the merits or on the ground of untimeliness, bar the presentation of the same claims, because they were previously litigated. **See** 42 Pa.C.S.A. § 9544(a)(3). Accordingly, no relief is due on Haggerty's fourth issue.

In his fifth issue, Haggerty avers that "previous breakdowns" in the PCRA court's operations — during the litigation of his first and second PCRA petitions — amounted to "extraordinary circumstances" and "government interference." Haggerty's Brief at 57-59. Haggerty claims these "breakdowns" were: (1) the trial court's failure to reinstate his post-sentence

rights *nunc pro tunc*; and (2) the first PCRA court's "overlook[ing]" of Sentencing Counsel's abandonment of him and failure to file a post-sentence motion.[21] *Id*. at 60-62.

After review, we conclude that the PCRA court's denial of relief is supported by the record and free of error. With respect to the trial court's alleged failure to reinstate his post-sentence rights *nunc pro tunc*, Haggerty could and should have raised this issue at the time of the trial court's ruling. Similarly, Haggerty could have raised a claim that Sentencing Counsel was ineffective for not filing a post-sentence motion in his first PCRA. Thus, these issues are waived for PCRA purposes, and Haggerty's bald claim that these issues amounted to breakdowns in the courts' operation is meritless. *See* 42 Pa.C.S.A. §§ 9543(a)(3), 9544(b). No relief is due on Haggerty's fifth issue.

In his sixth issue, Haggerty alleges that the order denying his second PCRA petition was a legal nullity, due to the violation of the rule against hybrid representation. Hybrid representation is not permitted in Pennsylvania. *Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016).

> Accordingly, this Court will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities. When a counseled defendant files a *pro se* document, it is noted on the docket and forwarded to counsel pursuant to Pa.R.Crim.P. 576(A)(4), but no further action is to be taken. . . .

---

[21] Haggerty alleges a third "breakdown:" the first PCRA court's allowing hybrid representation, where First PCRA Counsel incorporated his *pro se* claims by reference. Haggerty's Brief at 63. As this claim is largely overlaps with his sixth issue, we defer discussion of it.

*Id*.

On appeal, Haggerty reiterates his claim that in filing an amended PCRA petition, First PCRA Counsel's incorporation of his *pro se* claims by reference constituted improper hybrid representation. Haggerty then extrapolates that: the PCRA court's order denying his counseled, amended first PCRA petition was a legal nullity; the issues raised in counsel's amended PCRA petition were not properly resolved; and the issues raised therein "should be treated as still pending before the PCRA court." Haggerty's Brief at 69 (emphasis omitted).

We conclude that Haggerty's repeated insistence, that First PCRA Counsel's incorporation of his *pro se* claims by reference violated the rule against hybrid representation, is mistaken. The rule against hybrid representation does not prohibit an attorney from any action; instead, the rule is focused on preventing a defendant, who is represented by counsel, from filing *pro se* documents with the court. **See Williams**, 151 A.3d at 623. In addition, the only legal nullities contemplated by the rule concern the **pro se** filings, and not any order ruling on the **counseled** filings. **See id**. Finally, Haggerty's factual premise is inaccurate; First PCRA Counsel did not merely incorporate his *pro se* claims by reference without providing additional analysis or discussion. Although First PCRA Counsel stated he was "incorporat[ing] all *pro se* claims in order to preserve [them] for the record,"

but also discussed why he believed the *pro se* issues lacked merit.[22]  Amended PCRA Petition, 11/19/09, at 8, 13-15.  First PCRA Counsel then independently presented new claims of Trial Counsel's ineffective assistance.  ***See id***. at 15-22.  Accordingly, no relief is due on Haggerty's fifth issue.

In his final issue, Haggerty argues that his "multiple challenges to the legality of the sentences," which he has raised before, were "non-waivable," and "trial courts never relinquish their jurisdiction to correct an illegal sentence."  Haggerty's Brief at 71, 75.  Haggerty thus concludes the second PCRA court erred in dismissing these claims, and this Court should remand this matter for resentencing.

First, we note that on appeal, Haggerty does not explain which sentences were illegal nor why; instead, he merely states that his illegal sentence claims "sound[] in merger, double jeopardy and lack of statutory authority."  Haggerty's Brief at 70 (unnecessary punctuation omitted); ***see also*** Pa.R.A.P. 2119(a) (providing the argument shall include such discussion and citation of authorities as are deemed pertinent").  In any event, Haggerty acknowledges that he previously raised these claims in his second PCRA petition; thus, the issues are previously litigated and cannot be brought in a

---

[22] These *pro se* PCRA issues included claims that: the trial court lacked jurisdiction to preside over this case; the prosecutor tampered with witness testimony; and Trial Counsel was ineffective for not calling character witnesses on Haggerty's behalf.  ***See*** Amended PCRA Petition, 11/19/09, at 8, 13-15.

subsequent PCRA petition. *See* 42 Pa.C.S.A. §§ 9543(a)(3), 9544(a)(3).

Additionally, Haggerty ignores this Court's discussion in the prior

memorandum affirming the denial of that PCRA petition:

> [W]e observe [Haggerty's] claim that his sentence is illegal and thus always subject to correction does not allow him to circumvent the PCRA's timeliness requirements. *See* [Haggerty's] Brief at 76, 84-85. It is well-settled that "the period for filing a PCRA petition is not subject to the doctrine of equitable tolling; instead, the time for filing a PCRA petition can be extended only by operation of one of the statutorily enumerated exceptions to the PCRA time-bar." [***Commonwealth v. Robinson***, 139 A.3d 178, 185 (Pa. 2016).] "[I]n order for this Court to review a legality of sentence claim, there must be a basis for our jurisdiction to engage in such review. . . . [T]hough not technically waivable, a legality [of sentence] claim may nevertheless be lost should it be raised . . . in an untimely PCRA petition for which no time-bar exception applies, thus depriving the court of jurisdiction over the claim." ***Commonwealth v. Miller***, 102 A.3d 988, 995 (Pa. Super. 2014) . . . .

***Haggerty***, 181 A.3d 454 (unpublished memorandum at *8) (unnecessary

punctuation omitted). The same analysis applies here. Thus, we also

conclude Haggerty's claims of illegal sentencing were subject to the PCRA's

timeliness requirements, and he has not established a timeliness exception

applies.

In sum, we reverse, in part, the PCRA court's October 12, 2023 order

that dismissed Haggerty's challenge to his registration requirements under

Megan's Law III. We remand for the PCRA court to provide new notification

of Haggerty's registration requirements under the applicable provisions of

Subchapter I of SORNA II. We affirm the remainder of the PCRA court's order.

Order affirmed in part and reversed in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/27/2024